**UNITED STATES v. GATES.**

No. 282, Docket 21383.

United States Court of Appeals Second Circuit.

Argued June 13, 1949.

Decided July 1, 1949.

See also D.C., 83 F.Supp. 197.

Harry Sacher, New York City (Abraham J. Isserman, Los Angeles, Cal., Louis F.

McCabe, Philadelphia, George W. Crockett, Jr., Washington, D.C. and Richard Gladstein, San Francisco, Cal., on the brief), for appellant.

John F. X. McGohey, U. S. Atty. (Frank H. Gordon, Special Asst. to U. S. Atty, New York City, and Irving S. Shapiro, Sp. Asst. to the U. S. Atty., Washington, D. C., Edward C. Wallace, Sp. Asst. to the Atty. Gen.; and Lawrence K. Bailey, Attorney, Department of Justice, Washington, D. C. of counsel), for appellee.

Emanuel H. Bloch, New York City, Amicus Curiae representing several trade union organizations.

Thomas Russell Jones, Brooklyn, N. Y., Amicus Curiae representing several Negro citizens.

Before SWAN and CHASE, Circuit Judges, and J. JOSEPH SMITH, District Judge.

SWAN, Circuit Judge.

The appellant is one of eleven defendants who are on trial before Judge Medina and a jury in a criminal case entitled United States v. Foster, et al., on an indictment charging conspiracy to teach and advocate the overthrow of the Government of the United States by force and violence. 18 U. S.C. §§ 10, 11 [now §§ 2385, 2387]. The appellant took the stand in his own defense and introduced as an exhibit a pamphlet entitled "Who Ruptured Our Duck?" On direct examination he testified that the pamphlet was prepared under his direction and supervision. On cross-examination he testified that the exhibit was prepared by three persons who worked under his direction. He was then asked to tell who those persons were. An objection to this question was overruled and he was directed by the court to answer it. After his counsel, with the court's permission, had advised him that he might invoke his constitutional rights if he so desired, he answered: "On the grounds of the First and Fifth Amendments to the Constitution of the United States, I decline to answer that question, and I do so because I would have to bow my head in shame if I gave such information, and I wouldn't be able to raise my head in decent society if I became a stool pigeon under the direction of the Court or anybody else."

The Court struck out so much of the answer as follows the words "and I do so," and advised the appellant that he had no such rights as he claims under the provisions of the Constitution. The jury was then excused and after its retirement and after hearing argument from counsel and from the appellant's co-defendant Mr. Dennis, Judge Medina informed Mr. Gates that he adjudged him guilty of wilful and deliberate contempt and sentenced him as follows:

"You are to be remanded until you have purged yourself of your contempt for a period not to exceed 30 days."

The appellant had previously been at liberty on bail. A formal judgment and committment was signed on the same date (June 3, 1949) and a notice of appeal was immediately filed.

The appellant's argument covers a wide range, asserting that to compel him to answer the question addressed to him would violate the First, Ninth and Tenth Amendments as well as the Fifth. But in our opinion the appeal involves only the narrow question whether the privilege against self-incrimination justifies the appellant's deliberate refusal to obey the court's direction to answer.

The immunity from giving testimony in a criminal trial is one which a defendant may waive. When he takes the stand his waiver is not partial; he subjects himself to cross-examination, within the limits of the appropriate rules of evidence, like any other witness. He may be cross-examined for the purpose, among others, of impeaching his credibility. Reagan v. United States, 157 U.S. 301, 305, 15 S.Ct. 610, 39 L.Ed. 709. Hence, if the question addressed to the appellant was logically relevant, and competent within the scope of the rules of cross-examination, it was a proper question. Raffel v. United States, 271 U.S.

80

494, 497, 46 S.Ct. 566, 70 L.Ed. 1054; Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704. In the case at bar the appellant voluntarily took the stand, introduced the exhibit, and testified on cross-examination that it was prepared by three persons acting under his direction. That an inquiry as to the identity of those persons was relevant and competent under rules of cross-examination seems to us too clear for debate. See Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078. How the disclosure of their identity could incriminate the appellant it is impossible to perceive, since the pamphlet contains nothing on its face violative of federal law; indeed, it was introduced by the appellant for the very purpose of negating the charges made in the indictment. But if such disclosure would in some undisclosed way tend to incriminate him, he has waived his privilege by voluntarily bringing the pamphlet before the court and testifying to his part in its preparation. As Mr. Justice Stone said in Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054: "His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing."

The appellant vigorously urges that the court should establish a rule of public policy to protect him from the embarrassment of disclosing the identity of his associates, and to protect them from fear of economic reprisals so that activities claimed to be of a political nature may be carried on in secret. Such a rule would in effect transfer from the court to the witness the management of the trial with respect to the admission and exclusion of evidence, since it would enable the witness to determine what testimony to give and what to withhold. If such a rule of policy is to be established it must be done by Congressional enactment or a judicial pronouncement which this court is constrained to follow. We shall not voluntarily initiate such a rule.

The judgment is affirmed.