**Oleta O'Connor YATES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 13535.**

United States Court of Appeals
Ninth Circuit.

July 26, 1955.

---

Margolis, McTernan & Branton, Los Angeles, Cal., for appellants.

Gladstein, Andersen & Leonard, San Francisco, Cal., Robert W. Kenny, Daniel Marshall, Los Angeles, Cal., amici curiæ.

Laughlin E. Waters, U. S. Atty., Norman W. Neukom, Los Angeles, Cal., Lawrence K. Bailey, Washington, D. C., Ray H. Kinnison, Assts. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

The defendant Yates was on trial with others on a charge of conspiracy. She took the witness stand in her own defense. Upon cross-examination, she declined to answer four questions upon June 26, 1952, although repeatedly ordered by the court so to do. The trial of the criminal case was interrupted. A hearing was had. The trial judge committed the defendant Yates to the custody of the Marshal until she should purge herself of the contempt by answering these four questions. This Court has recently held this commitment ineffective after the trial of the criminal case had ended. Yates v. United States, 227 F.2d 844.

The criminal trial was then resumed. Defendant Yates was recalled to the stand. She thereafter, on June 30, refused to answer a series of eleven questions, although expressly directed to do so by the trial court.

Thereupon, the cause was submitted to the jury. A verdict of guilty was returned against defendant Yates and others. Judgment was pronounced on August 7, 1952. This conviction has been affirmed. Yates v. United States, 9 Cir., 225 F.2d 146.

On August 8, 1952, the court sentenced defendant Yates to a term of one year's imprisonment on each of the eleven counts: said terms to run concurrently with each other but consecutively to the sentence of five years imposed in the main case. This Court has recently affirmed this judgment in criminal contempt.

On September 8, 1952, the government presented a motion to punish defendant Yates for criminal contempt, alleging her willful disobedience to the orders of the court on June 26 in the failure to answer the four questions, in default of which she had theretofore been committed to coercive custody. The court sentenced the defendant to a period of three years for each of the four separate contempts, the terms to commence and run concurrently and commitment issued thereon. Defendant was taken into custody on September 8 and commenced service of this sentence. The court subsequently modified the judgment to provide that the terms of imprisonment were to take effect after the release of defend-

ant from custody following service of the sentence in the main case.

Appeal has been taken from this order.

This situation is complex. To overcome the refusal of the defendant in a criminal case to answer these four questions, the court had committed her. While upon the witness stand during this confinement, Mrs. Yates had refused to answer eleven other questions of a similar nature, and was thereupon sentenced to imprisonment for a year as a punishment. This conviction has been upheld. It was expressly decided there that the two occasions were separate and distinct, and different corrective and punitive measures were within the competence of the court.

If the trial judge, at the same time and as part of the same judgment, had imposed a coercive confinement for an indefinite period and punitive imprisonment for a fixed term thereafter[1] for failure to answer these four questions, perhaps the difficulty might have been dissipated. As has been heretofore pointed out, the confusion of the language, if not the underlying concepts,[2] complicates the situation where, as here, there are two judgments pronounced at different times.

The purpose of the judge in the first commitment is by no means clear because of the confusion in the authorities. It seems the vindication of the power of the tribunal and necessity of an example for the enlightenment of other suitors might well have entered the consciousness if not the volition of the judge. Such factors as well as coercion of defendant might have characterized the purpose of the court when decreeing the first confinement. The judgment may well have been punitive as well as coercive.

The trial court may have conceived that defendant had made up her mind not to answer the questions before she went on the stand. The severity of the sentence which is now under consideration can be justified upon the theory that it was the intention of this defendant to achieve martyrdom by defying what she would probably characterize as the bourgeois institution of common law courts and to proclaim fanatic loyalty to the cause and at the same time by Aesopian language set up humanitarian motives as a basis for her refusal. If the trial judge believed the consistent refusal was part of a concerted action to bring into disrepute the jury trial as an instrumentality of democratic government, then it was his duty to punish and ours to affirm.[3] Both courts must be meticulously careful to observe the safeguards, procedural and substantive.

It has already been intimated that there are serious dangers inherent in postponing a punitive sentence for contempt. But a judge in a criminal trial is in a dilemma which requires judgment almost superhuman to solve correctly. A punitive sentence for contempt upon a defendant in a criminal case might seriously prejudice his standing before the trial jury. The peculiar nature of proceedings for contempt permits temporary coercive measures followed by imprisonment for a fixed term as punishment.[4] But, while coercion is applied, the defendant in the criminal case is entitled to know he may yet be subjected to a definite penalty for con-

1. United States v. United Mine Workers, 330 U.S. 258, 295, 67 S.Ct. 677, 91 L. Ed. 884.

2. When a slightly different problem arises in this field, the authorities are of little help. See especially the main opinion, concurring opinion and dissenting opinion in Penfield Co. of California v. Securities & Exchange Commission, 330 U.S. 585, 595, 603, 67 S.Ct. 918, 91 L.Ed. 1117, and Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717.

3. United States v. Gates, 2 Cir., 176 F.2d 78; United States v. Green, 2 Cir., 176 F.2d 169; United States v. Winston, 2 Cir., 176 F.2d 163. See also United States v. Hall, 2 Cir., 198 F.2d 726.

4. There is no denial here that a criminal contempt is punishable in an independent proceeding divorced from the original cause, in the course of which it may have occurred.

tempt and that the coercive restraint is not intended to relieve him of the punishment for the criminal refusals which he has already uttered.

In any event, the intellectual confusion noted prevents us from denominating the two periods of custody under two different judgments for the same four refusals as double jeopardy for the same acts. If then the record had shown a definite notification to defendant at an appropriate time, the coercive and punitive sanctions might have been successively applied. But the concept of due process of law is an additional safeguard. The notions inherent therein will not permit, without prior positive notification, what otherwise might be viewed as the indefinite confinement of a defendant in a criminal case pending his submission as a witness to authority, and then, when imprisonment has had no effect, the punishment of the refusal of obedience by incarceration for a term of years.[5]

Judgment reversed.

See, also, 227 F.2d 848.

---

**5.** Since proceedings in contempt are sui generis, here the whole course of action in the criminal trial and all the subsequent proceedings must be appraised.