# YATES *v.* UNITED STATES.

No. 2.  Argued October 9–10, 1956.—Restored to the calendar for reargument June 10, 1957.—Reargued October 22, 1957.—Decided November 25, 1957.

*Leo Branton, Jr.* argued the cause for petitioner. With him on the briefs were *Ben Margolis. A. L. Wirin* entered an appearance for petitioner.

*Kevin T. Maroney* argued the cause for the United States on the original argument, and *Philip R. Monahan* on the reargument. With them on the brief were *Solicitor General Rankin* and *Assistant Attorney General Tompkins.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This case is one of criminal contempt for refusal to answer questions at trial. Petitioner, admittedly a high executive officer of the Communist Party of California, and 13 codefendants were indicted and convicted of conspiracy to violate the Smith Act.[1] During the trial, peti-

---

[1] This Court reversed the convictions in the principal case. *Yates* v. *United States,* 354 U. S. 298 (1957).

tioner refused on June 30, 1952, to answer 11 questions relating to whether persons other than herself were members of the Communist Party. The District Court held petitioner in contempt of court for each refusal to answer, and imposed 11 concurrent sentences of one year each, which were to commence upon petitioner's release from custody following execution of the five-year sentence imposed in the conspiracy case. This judgment was affirmed by the Court of Appeals. 227 F. 2d 851. We granted certiorari. 350 U. S. 947. The principal question presented is whether the finding of a separate contempt for each refusal constitutes an improper multiplication of contempts. We hold that it does, and find that only one contempt has been committed.

The circumstances of petitioner's conviction are these. After the Government had rested its case in the Smith Act trial, all but four of the defendants—petitioner and three others—rested their cases. Petitioner took the stand and testified in her own defense. During the afternoon of the first day of her cross-examination, June 26, 1952, she refused to answer four questions about the Communist membership of a nondefendant and of a codefendant who had rested his case.[2] In refusing to answer, she stated, ". . . [T]hat is a question which, if I were to answer, could only lead to a situation in which a person could be caused to suffer the loss of his job . . . and perhaps be subjected to further harassment, and . . . I cannot bring myself to contribute to that." She added, "However many times I am asked and in however many forms, to identify a person as a communist, I can't bring myself to do it . . . ." The District Court adjudged her guilty of civil contempt for refusing to answer these ques-

---

[2] At the morning session petitioner indicated that she would answer questions as to the Party membership of codefendants who had not rested their cases, and in fact she did so.

tions, and committed her to jail until she should purge herself by answering the questions or until further order of the court. She was confined for the remainder of the trial.[3]

On the third day of petitioner's cross-examination, June 30, 1952, despite instructions from the court to answer, petitioner refused to answer 11 questions which in one way or another called for her to identify nine other persons as Communists. The stated ground for refusal in these instances was petitioner's belief that either the person named or his family could "be hurt by" such testimony. She expressed a willingness to identify others as Communists—and in one instance did so—if such identification would not hurt them. The judge stated that he expected to treat these 11 refusals as criminal contempt under Rule 42 (a) of the Federal Rules of Criminal Procedure.[4] Adjudication of the contempt was deferred until completion of the principal case.

---

[3] The trial ended on Aug. 5, 1952. Petitioner was confined under the judgment of conviction in the principal case until Aug. 30, 1952, when she was released on bail pending appeal in that case. She was reconfined on Sept. 4, 1952, this time under the civil contempt order of June 26. She was released on bail on Sept. 6, 1952, pending appeal from the order directing her reconfinement. That order was reversed on appeal on the ground that petitioner could not purge herself of the civil contempt since the trial had ended. *Yates* v. *United States,* 227 F. 2d 844. Petitioner was again confined on Sept. 8, 1952, after the District Court, on that same day, adjudged her in criminal contempt of court for her June 26 refusals to answer. She was released on bail on Sept. 11, 1952, pending appeal from that judgment, which was later reversed on appeal because the district judge had given her no notice at the time of the trial that he expected to hold her in criminal contempt for the June 26 refusals. *Yates* v. *United States,* 227 F. 2d 848. Neither the civil nor the criminal contempt sentences for the June 26 refusals, nor their reversals, are under review in the present case.

[4] "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt

After conviction and imposition of sentences in the conspiracy case, the court, acting under 18 U. S. C. § 401,[5] found petitioner guilty of "eleven separate criminal contempts" for her 11 refusals to answer questions on June 30. No question is raised as to the form or content of the specifications.

The court sentenced petitioner to imprisonment for one year on each of the 11 separate specifications of criminal contempt. The sentences were to run concurrently and were to commence upon her release from custody following execution of the five-year sentence imposed on the conspiracy charge. Upon imposing sentence, the court stated that if petitioner answered the 11 questions then or within 60 days, while he had authority to modify the sentence under Rule 35 of the Federal Rules of Criminal Procedure, he would be inclined to accept her submission to the authority of the court. However, petitioner persisted in her refusal.

The summary contempt power in the federal courts, ". . . although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers

---

and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

[5] "§ 401. POWER OF COURT.

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

charged with the duty of administering them." *Ex parte Terry*, 128 U. S. 289, 313 (1888). The Judiciary Act of 1789 contained a section making it explicit that federal courts could "punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same . . . ." 1 Stat. 73, 83. After United States District Judge Peck's acquittal in 1831 [6] on charges of high misdemeanors for summarily punishing a member of the bar for contempt in publishing a critical comment on one of his judgments, Congress modified the statute. In the Act of 1831, the contempt power was limited to specific situations such as disobedience to lawful orders. 4 Stat. 487. See Frankfurter and Landis, Power of Congress Over Procedure in Criminal Contempts in "Inferior" Federal Courts, 37 Harv. L. Rev. 1010, 1023–1038. The present code provision is substantially similar.[7] We have no doubt that the refusals in question constituted contempt within the meaning of 18 U. S. C. § 401 (3).

This case presents three issues. Petitioner claims that the sentences were imposed to coerce her into answering the questions instead of to punish her, making the contempts civil rather than criminal and the sentences to a prison term after the close of the trial a violation of Fifth Amendment due process. Second, petitioner argues that her several refusals to answer on both June 26 and June 30 constituted but a single contempt which was total and complete on June 26, so that imposition of contempt sentences for the June 30 refusals was in violation of due process. Finally, petitioner contends that her one-year sentences were so severe as to violate due process and constitute cruel and unusual punishment under the Eighth Amendment.

---

[6] Stansbury, Report of the Trial of James H. Peck (1833).

[7] See note 5, *supra*.

## I.

While imprisonment cannot be used to coerce evidence after a trial has terminated, *Yates* v. *United States,* 227 F. 2d 844; cf. *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418, 443, 449 (1911), it is unquestioned that imprisonment for a definite term may be imposed to punish the contemnor in vindication of the authority of the court. We do not believe that the sentences under review in this case were imposed for the purpose of coercing answers to the 11 questions. Rather, the record clearly shows that the order was made to "vindicate the authority of the court" by punishing petitioner's "defiance" thereof. The sentencing judge did express the hope that petitioner would still "purge herself to the extent that she bows to the authority of the court" by answering the questions either at the time of the sentencing or within 60 days thereafter. In doing so, however, he acted pursuant to the power of the court under Rule 35 of the Federal Rules of Criminal Procedure [8] rather than under any theory of civil contempt. Indeed, in express negation of the latter idea, he stated that should she answer the questions, "[i]t could have no effect upon this proceeding and need not be accepted as a purge, because of the fact that the time has passed . . . for the administration of justice in this case to be affected by it."

## II.

Petitioner contends that the refusals of June 26 and June 30 constituted no more than a single contempt because the questions asked all related to identification of others as Communists, after she made it clear on June 26 that she would not be an informer. She urges

---

[8] "CORRECTION OR REDUCTION OF SENTENCE.

". . . The court may reduce a sentence within 60 days after the sentence is imposed . . . ."

that the single contempt was completed on June 26 since the area of refusal was "carved out" on that day. From this, petitioner concludes that no contempt was committed on June 30 and that imposition of criminal contempt sentences for refusals of that day to answer violates due process guaranties.

A witness, of course, cannot "pick and choose" the questions to which an answer will be given. The management of the trial rests with the judge and no party can be permitted to usurp that function. See *United States* v. *Gates,* 176 F. 2d 78, 80. However, it is equally clear that the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers. See *United States* v. *Orman,* 207 F. 2d 148.

Even though we assume the Government correct in its contention that the 11 questions in this case covered more than a single subject of inquiry, it appears that every question fell within the area of refusal established by petitioner on the first day of her cross-examination. The Government admits, pursuant to the holding of *United States* v. *Costello,* 198 F. 2d 200, that only one contempt would result if Mrs. Yates had flatly refused on June 26 to answer *any* questions and had maintained such a position. We deem it *a fortiori* true that where a witness draws the lines of refusal in less sweeping fashion by declining to answer questions within a generally defined area of interrogation, the prosecutor cannot multiply contempts by further questions within that area. The policy of the law must be to encourage testimony; a witness willing to testify freely as to all areas of investigation but one, should not be subject to more numerous charges of contempt than a witness unwilling to give any testimony at all.

Having once carved out an area of refusal, petitioner remained within its boundaries in all her subsequent

refusals. The slight modification on June 30 of the area of refusal did not carry beyond the boundaries already established. Whereas on June 26 the witness refused to identify other persons as Communists, on June 30 she refused to do so only if those persons would be hurt by her identification. Although the latter basis is not identical to the former, the area of refusal set out by it necessarily fell within the limits drawn on June 26. We agree with petitioner that only one contempt is shown on the facts of this case.

That conclusion, however, does not establish petitioner's contention that no contempt whatsoever 'was committed by her refusal to answer the 11 questions of June 30. The contempt of this case, although single, was of a continuing nature: each refusal on June 30 continued the witness' defiance of proper authority. Certainly a party who persisted in refusing to perform specific acts required by a mandatory injunction would be in continuing contempt of court. We see no meaningful distinction between that situation and petitioner's persistent refusal to answer questions within a defined area.

Though there was but one contempt, imposition of the civil sentence for the refusals of June 26 is no barrier to criminal punishment for the refusals of June 30. The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem. *Rex Trailer Co.* v. *United States,* 350 U. S. 148, 150 (1956); *United States* v. *United Mine Workers,* 330 U. S. 258, 299 (1947).[9] Clearly, if

---

[9] Nor does the finding of a single contempt mean that the criminal contempt sentence under review in this case constitutes double jeopardy because the court also imposed a criminal contempt sentence for the June 26 refusals. The latter was reversed on appeal, note 3, *supra,* and in any event was imposed after the criminal contempt sentence for the June 30 refusals.

the civil and criminal sentences could have been imposed simultaneously by the court on June 26, as the *United Mine Workers* case holds, it scarcely can be argued that the court's failure to invoke the criminal sanction until June 30 was fatal to its criminal contempt powers. Indeed, the more salutary procedure would appear to be that a court should first apply coercive remedies in an effort to persuade a party to obey its orders, and only make use of the more drastic criminal sanctions when the disobedience continues. Had the court imposed a civil sentence and found petitioner guilty of criminal contempt on June 26, it could have postponed imposition of a criminal sentence until termination of the principal case. The distinction between that procedure and the one followed here is entirely formal.

## III.

While the sentences imposed were concurrent, it may be that the court's judgment as to the proper penalty was affected by the view that petitioner had committed 11 separate contempts. In addition, petitioner has now served a total of over 70 days in jail awaiting final disposition of the several proceedings against her. The conspiracy conviction and another criminal contempt conviction have been reversed, and the sentences imposed here have been termed "severe" by the Court of Appeals. 227 F. 2d 851, 855. Moreover, the court should consider ". . . the extent of the willful and deliberate defiance of the court's order [and] the seriousness of the consequences of the contumacious behaviour . . . ." *United States* v. *United Mine Workers, supra,* at 303. In this regard, petitioner's understandable reluctance to be an informer, although legally insufficient to explain her refusals to answer, is a factor, as is her apparently courteous demeanor and the fact that her refusals seem to have had no perceptible effect on the outcome of the

trial. All of this points up the necessity, we think, of having the trial judge reconsider the sentence in the cool reflection of subsequent events.[10]

The contempt convictions on specifications II–XI, inclusive, are reversed. The contempt conviction on specification I is affirmed, but the sentence on that conviction is vacated, and the case is remanded to the District Court for resentencing in the light of this opinion.[11]

*It is so ordered.*

MR. JUSTICE BURTON agrees with the Court of Appeals and the trial court that petitioner's refusals to answer when ordered to do so by the trial court on June 30 constituted at least nine contempts of court. However, in view of all the circumstances, he now joins in the judgment of this Court remanding the case for resentencing.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

This case to me is a shocking instance of the abuse of judicial authority. It is without precedent in the books.

Mrs. Yates, not wanting to be an informer, refused on cross-examination to answer four questions concerning the Communist Party affiliations of any codefendant who had rested his case or any other person who might be subject to persecution by such a disclosure.

For this, her *first* refusal, she was given her *first* sentence and confined in jail for 70 days.[1] On the third

---

[10] In addition, the sentences imposed were ordered to commence upon completion of the five-year sentence in the conspiracy case. Reversal of the conspiracy conviction has rendered uncertain the date at which the sentences here imposed would begin.

[11] Cf. *Nilva* v. *United States,* 352 U. S. 385, 396 (1957).

[1] The trial judge was not through with Mrs. Yates. In his view, the *first* or "coercive" civil contempt order remained in effect so long as the judgment of conviction in the main case was pending on

day of her cross-examination she was asked 11 more questions along the same line and, adhering to her original position, remained adamant in her refusal to answer. The district judge told Mrs. Yates that he intended to treat her refusals to answer as 11 separate criminal contempts, but indicated that he would defer action on the criminal contempt for the *second* refusal for the duration of the trial. The conviction for criminal contempt because of her *second* refusal to testify was affirmed by the Court of Appeals (227 F. 2d 851) and is now affirmed by this Court.[2]

*First.* One reason I would reverse is that this is a transparent attempt to multiply offenses. The one offense which Mrs. Yates committed was her *first* refusal to answer. Her *second* refusal was merely the maintenance of the same position she took at the start of her cross-examination. I do not think a prosecutor should be allowed to multiply the contempts by repeating the questions. The correct rule, I believe, is stated in *United States* v. *Costello,* 198 F. 2d 200, 204.

> "Certainly the refusal to testify was an act in contempt of the Committee for which the defendant was subject to the punishment prescribed by the statute. But when the defendant made his position clear, the Committee could not multiply the contempt, and the punishment, by continuing to ask him questions each time eliciting the same answer: his refusal to

appeal. The Court of Appeals ordered her released (*Yates* v. *United States,* 227 F. 2d 844) on the ground that confinement for civil contempt is not permissible after the termination of the trial.

[2] Petitioner has not urged that this charge of criminal contempt should have been tried before some other judge. Cf. *Offutt* v. *United States,* 348 U. S. 11. Nor has petitioner contended that she could be held only on indictment by a grand jury, or tried only by a jury, or prosecuted without the other procedural safeguards of the Fifth and Sixth Amendments.

give *any* testimony. In other words, the contempt was total when he stated that he would not testify, and the refusals thereafter to answer specific questions can not be considered as anything more than expressions of his intention to adhere to his earlier statement and as such were not separately punishable."

Or, as stated in *United States* v. *Orman*, 207 F. 2d 148, 160.

". . . where the separate questions seek to establish but a single fact, or relate to but a single subject of inquiry, only one penalty for contempt may be imposed."

Any other rule gives the prosecutor and the judge the awful power to create crimes as they choose. Because of the prosecutor's efforts to multiply the offense by continuing the line of questions, Mrs. Yates' *second* refusal to answer, following consistently the position she had made clear to the court upon the first day of her cross-examination, was not a contempt. Her *second* refusal to answer was merely a failure to purge [3] herself of the first contempt, not a new one.

---

[3] This is apparent from what transpired when Mrs. Yates appeared before the trial judge in this case:

"I had hoped by this time that Mrs. Yates might be willing to purge herself; that she might be prompted to do so."

". . . as I view it, the court, in its discretion, might treat answers now to the questions as a vindication of judicial authority and treat it as purged."

"I take it from the defendant's statement that she is as adamant now as she was the day the questions were put."

"I hope Mrs. Yates will yet purge herself. I think, in offering to accept her answers now as a purge is a humane, merciful thing to do under the circumstances.

"I am not interested in imprisoning Mrs. Yates. I am interested in vindicating the authority of this court, which I feel must be

*Second.* Mrs. Yates might have been subjected to criminal penalties as well as civil coercion for the contempt she committed upon her *first* refusal to testify. See *Penfield Co.* v. *S. E. C.,* 330 U. S. 585; *United States* v. *United Mine Workers,* 330 U. S. 258. The district judge in fact attempted to impose a three-year criminal sentence for her *first* refusal to answer; but he was reversed by the Court of Appeals for his failure to give her the necessary notice during the pendency of the trial. *Yates* v. *United States,* 227 F. 2d 848.

What the Court now does is to make the present conviction do service for the invalid conviction for her *first* refusal to testify. This cannot be done unless we are to make a rule to fit this case only.

vindicated when anyone wilfully refuses to obey a lawful order of the court.

"If she at any time within 60 days, while I have the authority to modify this sentence under the Rules, wishes to purge herself, I will be inclined even at that late date to accept her submission to the authority of the court."