THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARÍA QUILES ALBINO, Defendant and Appellant.

No. 16288. Resubmitted June 4, 1961.—Decided June 23, 1961.

*William Morales Torres* for appellant. *J. B. Fernández Ba-dillo, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Alfredo Archilla Guenard, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Has the constitutional clause of due process of law been violated by holding the trial of appellant herein before the same judge who determined probable cause for his arrest? This is the fundamental question raised in the present appeal.

A police officer made a sworn deposition before the trial judge in order to obtain a search warrant for appellant's home. Supported by this sworn deposition the judge determined the existence of probable cause for the search and issued the corresponding warrant. The preliminary investigation having been executed and in view of the evidence obtained by the prosecuting attorney, the judge determined that there was probable cause for arrest. Finally, the case having been called for trial, the same judge presided the hearing in which defendant was found guilty of a violation of Act No. 220 of May 15, 1948, commonly known as the *Bolita* Act, and sentenced her to six months' imprisonment. Such is the state of facts on which appellant bases her contention that her civil rights have been violated upon being deprived of the fair trial to which she is entitled pursuant to the constitutional clause of due process of law.[1]

---

[1] The Constitution of the Commonwealth of Puerto Rico in its § 7, Art. II, establishes that "no person shall be deprived of his liberty or property without due process of law...." In incorporating this principle to our Constitution we used the same words appearing in the Federal Constitution, in the Constitution of the States, and those which appeared in the

This is not the first time that we have before our consideration the constitutional problem involved herein. Previously, in *In re Marín*, 81 P.R.R. 267 (1959), we already had the opportunity to render judgment as to the constitutionality of our own action—in a proceeding for the removal of a judge—which consisted in entertaining a proceeding for removal despite the fact that we had already determined the existence of probable cause for the filing of the complaint. [2] We decided that our action does not transgress the safeguards of the due process of law and in doing so we stated the following:

"In short, it is not and has never been the constitutional standard that any prior contact with the evidence, regardless of its scope and effect, disqualifies a judge from deciding subsequently the merits of a controversy. In each situation where that constitutional defect is alleged we must consider the nature of the procedure, the degree of connection between the judge and the evidence, and the probable influence of that connection on his disinterestedness and impartiality, and weigh those factors in the light of the moral integrity and professional discipline essential to any judge worthy of the name."

Organic Act of 1917. In the Report of the Bill of Rights Committee to the Constitutional Convention it was said that it was a language historically sanctioned, and it was clearly intended to incorporate into our fundamental law all the historical tradition which such language embraced. *Report, Bill of Rights Committee, Constitutional Convention* (1951).

The requisites established by our constitutional tradition in order to guarantee the righteousness and essential justness in criminal prosecutions are abundant and varied. We point out the following merely by way of illustration: the right to have assistance of counsel; the right to have a speedy and public trial; the right to be informed of the nature and cause of the accusation; the right to be confronted with the witnesses against him; the right not to incriminate himself by means of a confession involuntarily obtained; the right to a fair trial; and the right to a statute imposing the penalty which is not uncertain, ambiguous or doubtful.

[2] Our action was in conformance with the provisions of § 24 of the Judiciary Act (4 L.P.R.A. § 232), as said Act was in force on that date. The Legislative Assembly thereafter modified the proceeding. Act No. 60 of June 19, 1959 (4 L.P.R.A. § 232, 1960 Supp. at 192). Of course, the Legislative Assembly in enacting the amendment took notice of our statements in *In re Marín*, n. 21 at p. 280.

Pursuant to the rule previously set forth we decided in *In re Marín, supra,* that under the specific situation of facts and of law which said case presented, we were not transgressing due process of law when entertaining the hearing on the merits of the proceeding for removal. What we stated and decided therein is equally applicable in the case at bar.

Is the impartiality of a judge truly impaired because of the fact that he examined certain sworn statements in which a person is charged with the commission of certain acts which according to law constitute a public offense? Is his impartiality impaired then because he learns of the details of the accusation before the trial or because on the basis of certain sworn statements he makes a determination of probable cause for defendant's arrest?

In the case before the bench the judge a quo did not examine any witnesses. His participation consisted in examining a sworn deposition to determine whether there was probable cause to issue an order for search, and later another deposition to determine whether there was cause for arrest. Since he examined no witnesses there was no possibility that anything became etched on his mind that might influence a judge such as when he hears and sees a person testifying. His preliminary intervention in the proceedings is confined to the essentially passive participation as a judge, who in a completely impersonal manner examines some documents for purposes of determining whether the same are of sufficient weight to justify the order of arrest. His was not the active and zealous conduct of an accuser invested with the duty of bringing an offender before the court of justice, who devotes himself fully, with the vivacity and dynamic action required of his office of public prosecution, to the task of gathering the necessary evidence to support the charge which he is to file. On the other hand, in its philosophical concept, the absolute fairness of a judge is merely an ideal. This has

been set forth with typical clearness by Justice Frank in *In re J. P. Linahan*, 138 F.2d 650, 651 (C.A. 2, 1943): "Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, 'bias' and 'partiality' be defined to mean the total absence of pre-conceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will." In *In re Marín, supra,* we referred to the point of view held by Justice Frank and we mentioned several situations wherein a judge who has previous knowledge of the facts and has reached conclusions grounded on the same, takes cognizance of them again in order to render judgment. To that effect we stated the following at p. 278:

"...In civil and criminal procedures there are numerous occasions when the judge who is going to decide the suit on the merits acquires in some way, to a greater or lesser extent, initial knowledge of the facts, or is required to accept a particular appraisal of the pleadings on which to base his determinations. Aside from the elementary question of the 'image' that the judge may build upon examining well or poorly drafted allegations, we cite, by way of example, a judge's rulings on motions for dismissal, petitions for restraining orders, motions for summary judgment and new trial, and his participation in pretrial conferences, in the acts of reconciliation of certain divorce cases, and in the innumerable incidents resulting from the modern methods of discovery of evidence. More so, in administrative as well as in criminal and civil procedure, the action of a judge who retries a case after his judgment in the former trial was reversed, when he had the opportunity to know all the details of the evidence, is not void as unconstitutional."

A situation of facts similar to that of the case at bar was raised before this Court in *People* v. *Ruiz*, 58 P.R.R. 641 (1941), and in deciding the same we stated at pp. 643-44:

"Let us examine the incident on which the second assignment of error is based. It appears from the instructions given by the judge to the jury that the defendant Maximino Piazza

came to the district jail in the night of the crime, declaring that he had killed Serrano, and that the following day, which was a Sunday, in the morning, Piazza was taken by two detectives to Mr. Todd, Jr., District Judge, because at that moment there was no other judge or judicial officer who could fix the provisional bail and said judge ordered his arrest and fixed bail. It also appears that since the detectives told the judge that Piazza had issued a statement, the judge took the proper oath.

"None of the facts and circumstances that we have related incapacitated Judge Todd, Jr. to try the case, nor imposed on him the obligation to disqualify himself. Section 23, paragraph 3, of the Code of Civil Procedure, imposes on the judge the obligation to disqualify himself when he has been attorney or counsel to either party in the action or proceeding pending before his court 'or *fiscal* in an investigation or criminal proceeding where the facts are the same as in the action submitted for his decision'.

"According to Sections 12 and 13 of the Code of Criminal Procedure, district judges are magistrates 'with power to issue a warrant for the arrest of a person charged with a public offense'. Section 44*a* of the same code provides that 'in all warrants of arrest the amount of bail shall be fixed and said bail may be taken and admitted by any judge'; and Sections 32, 33 and 44 acknowledge the right that every person charged with the commission of a felony has to be taken without delay before a judge and that he should fix bail.

"We hold that the actions of Judge Todd, Jr. complied with the most strict fulfillment of his duties as judge; that at no moment did he act as prosecuting attorney and that he did not err in any manner when he acted as trial judge in this case."

And in the case of *Wilson* v. *Renfroe*, 91 So. 2d 857, 860 (Fla. 1956), a similar question was raised and the court stated the following in deciding the same:

"All of the decisions cited in the briefs of the parties have been examined. We find no controlling precedent in this jurisdiction. Our research, however, has led us to several cases from other jurisdictions holding to the effect that the mere fact that a trial judge presides at a *preliminary examination* and binds the accused to trial is not in and of itself sufficient to disqualify the judge from presiding at the subsequent trial. This appears

to be the generally-followed rule in the absence of some direct factual showing of bias or prejudice on the part of the judge against the accused."

However, similarly to *In re Marín, supra,* in the case at bar appellant cites *In re Murchison,* 349 U.S. 133 (1945) in support of his contention [3] that the due process of law is violated when a trial is held on the merits before the same judge who has previously made a determination of probable cause in the proceeding.

In *In re Murchison,* as analyzed in *In re Marín* at pp. 272, 273, "Murchison and White, the appellants in the case, appeared before [a judge] to testify on gambling and bribery of policemen. Murchison's answers left the judge persuaded that he was committing perjury. The judge then charged him with perjury and ordered him to appear before him and show cause why he should not be punished for criminal contempt. White refused to answer some of the questions asked by the judge on the ground that he was entitled to have counsel present with him before so doing. The judge charged him with contempt and ordered him to appear subsequently. The same judge then tried them in open court and sentenced them for contempt. The Supreme Court of Michigan affirmed the judgment and the defendants appealed to the Federal Supreme Court invoking, among other defenses, the guarantee of due process of law. The latter court, with three of its judges dissenting, accepted the appellants' contention and reversed the judgment.

"The Supreme Court considered that under the aforesaid circumstances a judge could not be wholly disinterested in the conviction or acquittal of an accused; that as a practical

---

[3] Appellant also invokes § 54 of the Spanish Code of Criminal Procedure of 1888, which established as a cause to challenge that the judge had been the committing magistrate in the cause and § 55 stated that the judge was compelled to disqualify himself. Even assuming that these sections were in force, *cf. Ex parte Mauleón,* 4 P.R.R. 119 (1903), the trial judge did not act as a committing magistrate. J. R. 1–2.

matter the most probable thing would be that the judge's impressions acquired during the secret session weighed more heavily with him than any testimony given in the open hearings; that there were no public witnesses who could be called upon to give disinterested testimony concerning what took place in the secret chambers of the judge; and that the accused was offered the unfair alternative of waiving cross-examination of the judge—sole witness of the events—or cross-examining him, knowing that the judge himself would be the one called upon to rule on the credibility of his testimony."

After analyzing the decision in *In re Murchison* in the foregoing manner, we proceeded to distinguish said case in *In re Marín* as follows:

"The differences between the procedure forbidden in *Murchison* and that provided by § 24 of the Judiciary Act are clear and fundamental. It is obvious at first blush that the former is a penal procedure while the latter is civil, similar to an administrative procedure, although sui generis. That difference, although important because of the greater constitutional and statutory limitations applicable to proceedings which may deprive a person of his liberty, is not controlling. This is so because § 24 provides that the parties shall have 'an opportunity to be heard' in a proceeding which, according to the legislative report, is 'essentially a trial,' and the disinterestedness and impartiality of the judge is a basic requirement of every trial. In trespassing, for that reason, the boundaries of the characterization of the procedure we notice that in the case at bar, unlike the *Murchison* case: 1) the justices of this Court were in no way whatever witnesses of the facts or influenced personally by the respondent's actions; 2) there were numerous witnesses of such events and the respondent had ample opportunity at a public hearing and with due assistance of counsel to examine them and offer testimony which he considered favorable to his defense; 3) the preliminary investigation was entrusted to certain officers of the Department of Justice and the justices of this Court had no relationship with the witnesses or intervened in any way whatever in the investigation; 4) the complaint was prepared and signed by the latter officers; and 5) they supported it before the Court by whatever evidence

and strategy they deemed convenient. The *Murchison* case is, therefore, clearly inapplicable to a situation in which the participation of this Court in the preliminary stage of the proceeding is limited to ordering an investigation of the facts, to examining the report, and to ordering the filing of a complaint, if it considers that there is cause 'for further proceedings'."

And in footnote 8, at p. 274, we added the following:

"Consider, also, that two recent decisions of the Federal Supreme Court have considerably limited the effects of the broad language used in *Murchison*, reducing its authority to the specific facts raised therein. Examine *Nilva* v. *United States*, 352 U.S. 385 (1957) and *Green* v. *United States*, 356 U. S. 165 (1958), in which the dissenting justices (352 U.S. 396, 403; 356 U.S. 193, 199), in vain requested the application of *Murchison* to other situations, even when, in those cases, the trial judges had been directly influenced by the actions of the defendants. See, also, *Sacher* v. *United States*, 343 U.S. 1 (1952); 2 Davis, Administrative Law Treatise 177-78 (1958); *Yates* v. *United States*, 355 U.S. 66 (1957); *Offutt* v. *United States*, 348 U.S. 11 (1954); *People* v. *Susoni*, 81 P.R.R. 120 (1959)."

It is unquestionable, therefore, that the situation of facts in the case at bar is fundamentally different from that considered in *In re Murchison*, and essentially similar to that of *In re Marín*. In *In re Marín*, as we have already seen, we decided that the constitutional provision on due process of law was not violated.[4]

█ This Court shall always be on the lookout to preserve the constitutional safeguards of the Bill of Rights against any invasion of the adverse forces of the essential liberty and dignity of the human being. In the present

---

[4] Nothing stated herein shall harm the consideration of a case wherein it may be effectively determined as it was stated in *In re Marín* and was proved in *In re Murchison* that "the nature of the procedure, the degree of connection between the judge and the evidence and the probable influence of that connection on his disinterestedness and impartiality" should lead us to the conclusion that defendant has not enjoyed a fair trial, to which he is entitled according to the principle of due process of law.

struggle of the democracies against totalitarian provocations, the preservation of the fundamental guarantees of individual liberty is an inevitable responsibility, inherent of the practice of the public trust which has been placed upon us. If we were to allow those liberties to be slowly undermined we would be planting the insidious seed of our own destruction. It is not an exaggeration to affirm that the very life of the democratic system is involved in that struggle. *Valentín* v. *Warden*, 80 P.R.R. 450 (1958).

But the safeguard due those pillars of liberty and which we must keep over them do not justify our giving free access to every allegation based on alleged injuries to the civil rights of a defendant. It must be proved that the right claimed has really been violated. The facts in the case at bar do not reveal any such injury.

■■ There remains for consideration two additional questions raised by appellant. They refer to the fact that the trial court erred in failing to continue the hearing of the case and in setting aside a motion for the nullity of search warrant and suppression of evidence.

Bearing in mind what we have repeatedly decided that the granting of a continuance of a trial always rests on the sound discretion of the trial court, and that we will not disturb such discretion unless an abuse is shown, *People* v. *Arce*, 67 P.R.R. 233, 241 (1947); *People* v. *Cordero*, 82 P.R.R. 367 (1961), let us consider the circumstances of the present case. The information was filed on March 10, 1955. The arraignment took place on the following March 24. The case was postponed on two occasions at appellant's request. Five months after the arraignment, when the case was called for trial on the merits and to argue a Motion for Nullity of Search and Suppression of Evidence, after having discussed said motion and dismissing it, continuance was requested in order to "decide the course to be followed in this

matter, whether to file a certiorari by virtue of the decision of Your Honor or to prepare to present the evidence." These facts are eloquent. It is clear from these facts that the trial court did not abuse its discretion in refusing to continue the trial.

■ In support of her contention that the search warrant is void, appellant maintains that the affidavit [5] supporting the issuance of the search warrant does not contain facts sufficient to constitute probable cause. A similar question was raised by appellant in *People* v. *Rivera*, 79 P.R.R. 697 (1956), and we held that the affidavit involved in that proceeding was sufficient. The sworn statement challenged herein besides containing the facts which we considered in *People* v. *Rivera*, contains additional facts and circumstances which tend to establish the existence of probable cause. The error assigned was not committed.

The judgment appealed from is affirmed.

Mr. Justice Serrano Geyls concurs in the result and the opinion except that in his judgment, the fact that the trial judge in discharging his duties of investigation examined certain sworn statements instead of hearing the witnesses is in nowise controlling. He considers that the same constitutional rules, as they were explained in *In re Marín*, 81 P. R.R. 267 (1959), are applicable to both situations.

---

[5] "That I know because I have seen Jane Doe k/a 'María' on several different occasions, manipulating, counting, confronting, checking and keeping in her above-mentioned house, *bolita* and *bolipool* material as described above, and money from *bolita* collections, that the last time I saw it was on February 21, 1955, that about 5:00 in the afternoon, while I was on duty near the Clausells ward in Ponce, P. R., when I passed in front of defendant's residence, I looked inside and saw several persons seated at a table and they were counting money. That I saw, besides, a paper bag from which they withdrew slips, tickets, *bolita* stubs, of different colors with printed three-digit numbers on them. That one of the ladies there and whom I could not identify, dictated three-digit numbers, which were entered in a book and compared by another person. That I noticed that they had several lists on the table containing names of persons and three-digit numbers to be used in the illegal game of *bolita*. That one of the persons there noticed my presence and closed the door, for which reason I could not seize the above-mentioned *bolita* material."