UNITED STATES of America

v.

Edward LEWIS.

Crim. A. No. 94–10156–NMG.

United States District Court,
D. Massachusetts.

Dec. 30, 1994.

Morris M. Goldings, Alice E. Moore, Mahoney, Hawkes & Goldings, Boston, MA, for defendant.

Fred M. Wyshak, Jr., U.S. Attorney's Office, Strike Force, Brian T. Kelly, U.S. Attorney's Office, Strike Force Div., Crim., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

A federal grand jury returned an indictment against the defendant, Edward Lewis ("Lewis"), charging him with two counts of perjury, two counts of criminal contempt and one count of obstruction of justice. Lewis has moved this Court to dismiss all five counts of the indictment pending against him. For the reasons stated herein, Lewis's motion will be denied.

## I. BACKGROUND [1]

In July, 1987, Lewis was served a subpoena to testify before a federal grand jury investigating money laundering activities in relation to Heller's Cafe and Michael London. Prior to appearing before the grand jury, Lewis met informally with an Assistant U.S. Attorney, Mitchell Dembin ("Dembin"). Dembin informed Lewis that he would not

[1]. The facts are adopted, in large part, from the decision of the First Circuit Court of Appeals in *In re: Grand Jury John Doe,* 993 F.2d 1530 (1st Cir.1993).

ask any questions regarding Lewis's alleged payment of "rent" to certain organized crime members while Lewis was acting as a bookmaker. The issue of rent was, in Dembin's opinion, beyond the scope of his investigation into money laundering. Accordingly, when Lewis appeared before the grand jury in early 1988, Dembin did not ask him any questions regarding the payment of rent.

Lewis made another appearance before a different federal grand jury on February 13, 1992. On that occasion, two Assistant U.S. Attorneys associated with the Organized Crime Strike Force questioned Lewis about the payment of rent. Lewis testified that he had not paid rent.

Nearly one year later, on January 14, 1993, the government subpoenaed Lewis to testify at the trial of Michael London in the case of *United States v. Michael London*, Criminal Action No. 90–10079 (Wolf, J.). At that time Lewis again testified that he had not paid any rent.

On January 29, 1993, the government informed Lewis's attorney that it had "reason to doubt" the truthfulness of Lewis's testimony denying the payment of rent. Two days later, the government informed the Court that Lewis had admitted that he had testified falsely both before the grand jury and at the London trial about the payment of rent. The government re-called Lewis as a witness in the London trial on February 3, 1993. At that time, Lewis admitted that he had, in fact, paid rent, but refused to identify the individuals to whom he had made payments despite the Court's order to do so.

On April 8, 1993, Lewis admitted to the grand jury that he had previously perjured himself, but he still refused to answer any further questions regarding the rent. As a result, on April 29, 1993, the Court held Lewis in civil contempt. The Court of Appeals for the First Circuit affirmed the Court's order of contempt in *In re: Grand Jury John Doe*, 993 F.2d 1530 (1st Cir.1993), and Lewis was incarcerated on June 8, 1993. On March 11, 1994, the district court found that there was no realistic possibility that Lewis would comply with its order to testify and therefore released him from incarceration.

A federal grand jury returned the instant indictment against Lewis on June 23, 1994.

## II. DISCUSSION

Lewis argues that the indictment pending against him should be dismissed on seven separate grounds which are discussed below *seriatim*.

### 1. Lewis recanted his perjury pursuant to 18 U.S.C. § 1623.

■ Lewis contends that Counts 1 and 2 should be dismissed because he recanted his perjurious testimony. The pertinent statute provides:

> Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, *or* it has not become manifest that such falsity has been or will be exposed.

18 U.S.C. § 1623(d) (emphasis added).

The use of the word "or" in § 1623(d) has created some controversy. Lewis argues that the plain reading of the statute and of the disjunctive "or" bars prosecution if he can show either one of the two requirements listed in § 1623(d). *See, e.g., United States v. Smith*, 35 F.3d 344 (8th Cir.1994). This Court is, however, bound by the statutory interpretations of the First Circuit Court of Appeals which has ruled that, under § 1623(d), a defendant seeking a bar from prosecution for recantation must show *both* that the perjury had not substantially affected the proceeding *and* that it had not become manifest that the falsity had been or would be exposed. *United States v. Scivola*, 766 F.2d 37, 45 (1st Cir.1985).

■ If forced to choose, this Court would, of course, apply the law of the First Circuit. In this case, however, the conflict among the circuits is immaterial because Lewis has failed to show that his recantation satisfies either of the two requirements of § 1623(d).

First, Lewis did not recant his prior false statements before it had become manifest that the falsity of those statements would be exposed. Lewis testified at the London trial on February 3, 1993, that he had, in fact, paid rent. He made that admission one year after he testified before the grand jury, and twenty days after he testified at the London trial, that he had *not* paid rent. The timing of his recantation strongly suggests that Lewis agreed to reveal his false testimony on February 3, 1993, only because the Assistant U.S. Attorney had informed his lawyer a few days earlier that the government "had reason to doubt the truthfulness" of his testimony. Moreover, by February 3rd, Lewis was aware that the government had indicted two bookmakers, James Katz and Burton Krantz, who could contradict Lewis' testimony and reveal his perjury to the government.

Second, Lewis offers no evidence that his false statements did not "substantially affect" either the London trial or the grand jury proceedings. He "recanted" his testimony at the London trial on February 3, twenty days after he made the false statements. Although the jury had not yet begun to deliberate, it had to process the evidence submitted during the intervening three weeks against the backdrop of Lewis' false statements. Furthermore, the Court, the government and Mr. London had to expend additional time and resources to restore the integrity of the evidence at the trial. Finally, Lewis did not recant his false statements before the grand jury until April 8, 1993, almost fourteen months after he originally made his false statements to that same grand jury. Lewis fails to show this Court how the grand jury investigation was not substantially affected by his false statements over that fourteen month period.

Accordingly, because the Court finds that Lewis has not satisfied the requirements of 18 U.S.C. § 1623(d), it will deny Lewis's motion to dismiss Counts 1 and 2.

### 2. The government "improperly" seeks multiple counts of contempt through its repeated questioning.

■ Lewis relies on *Yates v. United States*, 355 U.S. 66, 73, 78 S.Ct. 128, 132, 2 L.Ed.2d 95 (1957), to argue that Counts 4 and 5, which charge him with criminal contempt for his alleged refusal to testify, should be dismissed. In *Yates*, the Supreme Court stated that the government could not "multiply contempts by repeated questioning on the same subject of inquiry," but it held that the prosecution could not multiply contempts *within the same trial. Id. Yates*, therefore, is inapposite to this case, in which the government seeks to prosecute Lewis for contempt in two separate, distinct proceedings: at the London trial and before the grand jury. Consequently, this Court rejects Lewis' argument that the government is improperly seeking to multiply contempts against him.

### 3. Count 3, charging obstruction of justice, subsumes Count 1, which charges perjury.

■ Lewis argues that Count 1, which charges him with perjury before the grand jury, should be dismissed because it is multiplicitous of, and subsumed within, Count 3, which charges him with obstruction of justice on account of his false statements before the grand jury. This issue is governed by the Supreme Court's decision in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Supreme Court held that:

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182.

Count 1 and Count 3 charge Lewis with committing two separate offenses, because each count requires proof of a fact which the other does not. Perjury, which comprises Count 1, requires proof that the defendant made a false statement under oath. 18 U.S.C. § 1623(a). Obstruction of justice, which comprises Count 3, requires proof that the defendant corruptly influenced, obstructed or impeded the due administration of justice. 18 U.S.C. § 1503. Obstruction of justice does not require proof of a false state-

ment under oath, and perjury does not require proof that the defendant had the specific intent to impede justice. Therefore, because Counts 1 and 3 charge Lewis with committing two separate offenses, the Court rejects Lewis' argument that the two counts are multiplicitous. *See United States v. Parrilla–Tirado*, 22 F.3d 368, 372 (1st Cir.1994) (holding that a defendant may be prosecuted for two offenses, even if those two offenses arise out of the same conduct); *United States v. Susskind*, 965 F.2d 80, 85 (6th Cir.1992) ("rendering of false testimony (§ 1623) standing alone, is not obstruction of justice (§ 1503)").

### 4. There is insufficient evidence to support Count 3.

Lewis contends that the Court should dismiss Count 3 because there is insufficient evidence to prove that he had the specific intent to obstruct justice. The Court finds that the government has alleged sufficient facts such that, if accepted to be true by the factfinder, would support a conviction for obstruction of justice under 18 U.S.C. § 1503. The Court, therefore, will deny Lewis' motion to dismiss Count 3 for insufficient evidence.

### 5. It is a denial of Due Process to indict the defendant for criminal contempt after he was incarcerated for civil contempt.

■ Lewis argues that Count 4, charging him with criminal contempt, should be dismissed because he has already been incarcerated for civil contempt. The cases he cites imply that a person cannot be held in civil and criminal contempt *at the same time. See, e.g., United States v. Drum*, 569 F.Supp. 605, 608 (M.D.Pa.1983). They do not, however, stand for the proposition that a defendant can never be prosecuted for criminal contempt if he has already been incarcerated for civil contempt. Because civil and criminal contempt serve distinct purposes, the one coercive, the other punitive and deterrent, the imposition of the civil contempt in this case does not bar the subsequent prosecution for criminal contempt. *Yates*, 355 U.S. at 74, 78 S.Ct. 128. Thus, this Court rejects Lewis'

claim that Count 4 violates his due process rights.

### 6. Lewis cannot be held in criminal contempt because the question that he refused to answer was withdrawn.

■ Lewis asserts that this Court should dismiss Count 5 because the question about "rent" that he allegedly refused to answer during the London trial on February 3, 1993, was withdrawn. Lewis, however, cites no case law supporting his argument.

At the contempt hearing on the afternoon of February 3, 1993, the Court specifically refused to hold Lewis in civil contempt, which serves a coercive function, because the questions regarding rent were withdrawn and the Court, therefore, did not have to coerce Lewis to do or answer anything. *United States v. London*, Transcript, Nineteenth Day, at 178–81. Nevertheless, the trial judge noted that Lewis remained subject to future prosecution for his refusal to obey the Court's order earlier that day. *Id.* Indeed, Lewis committed criminal contempt if and when he refused to obey the Court's order to testify on the morning of February 3, 1993. That the question was withdrawn later that afternoon is irrelevant.

### 7. The government breached its agreement with Lewis not to question him about the payment of rent.

■ Lewis claims that, before he testified before the grand jury for the first time in January, 1988, Assistant U.S. Attorney Dembin agreed that the government would not ask him any questions regarding the payment of rent. He now argues that the government breached that alleged agreement by later asking him about the payment of rent, and contends that the government should therefore be estopped from pursuing this case.

Two courts have already examined this very issue. The First Circuit Court of Appeals decided that "the government in the initial grand jury sessions chose not to question [Lewis] about rent but never promised [him] permanent immunity from such questions." *In re: Grand Jury John Doe*, 993 F.2d at 1533. Another session of this Court

had previously reached the same conclusion. *In re: Grand Jury Witness,* No. 91–10007, slip op. (D.Mass. April 29, 1993). Lewis argues that due process demands that this Court reevaluate the same issue in the context of a criminal prosecution. When this Court does so, however, it also concludes that there was no agreement between Lewis and the government regarding the payment of rent. The evidence indicates that there was no written agreement and that Lewis can not describe the exact terms of the supposed oral agreement. In addition, the Assistant U.S. Attorney involved has stated, under oath, that he did not promise Lewis permanent immunity from questions regarding rent.

■■■■ This Court further considers the circumstances surrounding the alleged agreement. Once the government granted Lewis immunity, the grand jury could have used its subpoena power to inquire about the rent payments regardless of any prior agreement between Lewis and the government. The government, therefore, had no incentive to enter into an agreement that restricted its right to question Lewis. Moreover, because Lewis did not provide any consideration for, or rely to his detriment on, the alleged agreement, that agreement would have been unenforceable even if made. *See In re: Grand Jury Witness,* No. 91–10007, slip op. at 2 (D.Mass. April 29, 1993) (commenting on the fact that Lewis did not provide any consideration for the alleged agreement).

Based on the evidence submitted by the parties and on the circumstances surrounding the events at issue, this Court finds that the government did not promise Lewis permanent immunity from questions regarding rent payments.[2] Thus, the Court will not dismiss the indictment.

Finally, Lewis seeks an evidentiary hearing so that he can cross-examine Assistant U.S. Attorney Dembin, who supposedly en-

tered into the agreement with Lewis on the government's behalf. This Court finds, however, that it has sufficient information to resolve the issues presented by the defendant's motion and, therefore, denies Lewis's request for an evidentiary hearing. *See United States v. Cheely,* 814 F.Supp. 1430, 1436 (D.Alaska 1992).

### ORDER

For the foregoing reasons, the defendant's motion to dismiss is **DENIED**.

So Ordered.

---

2. Even if the government did enter into an agreement with Lewis, the Court doubts that such an agreement would shield him from prosecution for criminal contempt or obstruction of justice where the Court expressly ordered him to answer the questions submitted to him. The cases cited by Lewis on this point are not persuasive. For example, in *United States v. Rodman,* 519 F.2d 1058 (1st Cir.1975), the government entered into an immunity agreement with the defendant not to prosecute him if he produced information. Subsequent prosecution after such production resulted in a dismissal of the indictment which was upheld by the First Circuit Court of Appeals. In contrast, the government in this case did not violate an agreement not to prosecute the defendant.