

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-75,720

### EX PARTE LAWRENCE EDWARD THOMPSON, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NOS. 1036822 THROUGH 1036833 IN THE 248TH JUDICIAL DISTRICT
### COURT FROM HARRIS COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., not participating.

### O P I N I O N

Applicant seeks habeas corpus relief from sentences assessed against him in thirteen criminal contempt judgments entered by the 248th Judicial District Court of Harris County.

The State called applicant to testify before a jury in the criminal trial of another person named Patrick Encalade. Applicant refused to answer thirteen of the fourteen questions that the State asked him. The trial court entered a criminal contempt judgment against applicant for each refusal to answer (cause numbers 1036821 through 1036833). These judgments reflect that the trial court sentenced applicant to three days in the Harris County jail and a $50 fine for his first

refusal to answer (cause number 1036821)[1] and to six months in the Harris County jail and a $500 fine for each of applicant's other twelve refusals to answer (cause numbers 1036822 through 1036833).[2]

Prior to the State calling applicant to testify before the jury, the trial court held a hearing outside the jury's presence on whether applicant would testify. At this hearing, applicant dismissed a lawyer who had been appointed to advise applicant on his decision whether to testify. Applicant asserted no privileges that would excuse him from testifying. After applicant answered some of the State's questions that would be asked again in the jury's presence, the trial court stopped the questioning and told applicant that he must testify truthfully or face perjury charges. The trial court also informed applicant that he would be called to testify before the jury. Applicant told the trial court that he would not testify. The trial court responded that applicant would be held in contempt for each refusal to answer, that the sentence for his first refusal to answer would "[p]erhaps" be "three days and a fifty-dollar fine," and that his sentence for each subsequent refusal to answer would be "six months in the Harris County jail and a $500 fine." The trial court also orally pronounced that these sentences would each be "stacked on the other."[3]

---

[1] Applicant's writ does not list the judgment in this cause number as one that he is challenging.

[2] *See* § 21.002(b), TEX. GOV'T CODE, (punishment for criminal contempt "of a court other than a justice court or a municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both a fine and confinement in jail").

[3] This was the only time that the trial court made any oral pronouncement that applicant's contempt sentences would be "stacked on the other." The State suggests that the timing of this oral pronouncement was inadequate to stack applicant's contempt sentences. The State asserts:

At the time the trial court actually held applicant in contempt, assessed his

[THE COURT]: Here we have, Mr. Thompson, the situation that I'm going to require you to testify before the jury and you must testify truthfully or you will be facing perjury and you can be sure I, as well as members of the District Attorney's staff are going to be very alert to the issue of perjury.

Now, you are going to go ahead and testify, isn't that correct?

[APPLICANT]: No, ma'am.

[THE COURT]: You're not going to testify?

[APPLICANT]: No, I'm not.

[THE COURT]: Then, Mr. Thompson, I'm going to tell you this: You will be asked a question and you will answer the question. If you refuse to answer the question, I'm going to hold you in contempt of court. For each contempt, I have the power to sentence you to six months in the Harris County jail and a $500 fine. Each contempt. Understand me?

[APPLICANT]: Yes, ma'am.

[THE COURT]: Now, the first contempt, I'm not going to put the whole six

---

punishment and/or pronounced sentence in connection with any of the thirteen instances when he refused to testify before the jury (footnote omitted), it did not in any way mention or otherwise refer to cumulation of any of the sentences. It therefore appears that none of applicant's contempt sentences were actually cumulated since the trial court failed to make any specific order to that effect *at the time it pronounced any of applicant's sentences*. (Citation omitted).

(Emphasis in original).

The record also reflects that the trial court's judgments in cause numbers 1036821 through 1036833 contain no cumulation orders. Therefore, assuming that applicant's contempt sentences are valid, it is arguable that these sentences should run concurrently with each other and with any other sentence that applicant is currently serving. *See Ex parte Hernandez*, 758 S.W.2d 594, 596 (Tex.Cr.App. 1988) (where sentence is silent as to any order of cumulation of sentences or there is an improper order of cumulation, the sentence will automatically run concurrently with any other outstanding sentence). It is also arguable that these judgments could be corrected or reformed via a *nunc pro tunc* order to reflect that they run consecutively with each other and with any other sentence that applicant is currently serving. *See Ex parte Madding*, 70 S.W.3d 131, 135 (Tex.Cr.App. 2002) (when oral pronouncement of sentence and the written judgment vary, the oral pronouncement controls and this can be corrected via *nunc pro tunc*).

months and a five-hundred-dollar fine on you, not the first time, no.  As a warning I'm going to tell you I'm holding you in contempt.  Perhaps it would be for three days and a fifty-dollar fine.  Each time you refuse to answer after that, each time, you will be held in contempt.  I'm not going to say each time that you're being held in contempt.  I'm going to say, Mr. Thompson, that's No. 2.  Mr. Thompson, that's No. 3.  Mr. Thompson, that's No. 4.  Each time after No. 1 will carry with it six months in the Harris County jail and a $500 fine.  I want you to take me very seriously on this because they would not run concurrently; they would run consecutively, one stacked on the other.  You are going to testify.  Do you understand me?  Do you understand me?

[APPLICANT]: I understand you very well.

When the State called applicant to testify before the jury, applicant answered the State's first question asking applicant to introduce himself.  Applicant refused to answer the other thirteen questions that the State asked.[4]

Applicant alleges in his writ of habeas corpus that the trial court cited and sentenced him for contempt thirteen times and cumulated his sentences, requiring him to serve 2,163 days[5] and

---

[4]

The record further reflects that after applicant's first refusal to answer before the jury, the trial court held him in contempt and assessed "punishment at three days in the Harris County jail and a fifty-dollar fine."  After his second refusal to answer, the trial court stated, "[f]or that one, sir, that's six months in the Harris County jail and a $500 fine."  The trial court then stated that each subsequent refusal to answer would result in "six months in the Harris County jail and a $500 fine."  For each of applicant's subsequent refusals to answer, the trial court stated, "that's three," "that's four," and so on up to "that's 13."  The State suggests that this procedure may have resulted in applicant being held in contempt only for his first two refusals to answer.  The State asserts:

> Additionally, it appears that the trial court actually held applicant in contempt, assessed his punishment, and pronounced sentence only in connection with the first two instances where he failed to answer questions put to him before the jury.  Its action stating only "that's three," "that's four," and so on in connection with the remaining eleven instances where he failed to answer appears ineffective to either hold him in contempt, assess punishment, pronounce sentence, or cumulate any of the contempt sentences.

[5]

Applicant apparently arrived at this figure by multiplying the six-month sentences in cause numbers 1036822 through 1036833 by 12 for a total of 72 months, then multiplying this by 30 days

to pay $6,050.00 in fines. Applicant claims that these sentences violate Section 21.002(h)(1), TEX. GOV'T CODE.[6] He requests that he be discharged "from the illegal and excessive 2,163 days confinement and the $6,050.00 fine." We filed and set this case and ordered briefing on three issues:

1. Whether this Court has jurisdiction to consider applicant's original application for a writ of habeas corpus.

2. Whether applicant's sentence exceeded the statutory maximum for a contempt sentence as defined in Section 21.002(h)(1) of the Texas Government Code.

3. Whether applicant's confinement for contempt as ordered by the 248th District Court violates his due process rights.[7]

---

for a total of 2,160 days, and then adding the 3-day sentence in cause number 1036821 for a total of 2,163 days (6 x 12 x 30 + 3 = 2,163).

[6] Section 21.002(h)(1) provides that a person may not be confined for criminal contempt of court longer than "18 months, including three or more periods of confinement for contempt arising out of the same matter that equal a cumulative total of 18 months[.]"

[7] Applicant alleges that he is currently confined in a Texas Department of Criminal Justice (TDCJ) facility on a 75-year sentence for burglary out of Harris County, and that, when he has completed serving this sentence, he will be transferred by TDCJ to the Harris County jail to cumulatively serve the contempt sentences at issue in this case. The State appears to accept that this is a sufficient restraint on applicant's liberty to invoke this Court's original habeas jurisdiction to review the contempt orders. The State asserts:

On the subject of restraint, applicant alleges at p. vi of his application that he is presently confined in the McConnell Unit of the Texas Department of Criminal Justice as a result of his violation of parole in connection with his seventy-five year sentence from Harris County, and that Hon. Tommy Thomas, Sheriff of Harris County, Texas filed detainers against him with Texas Department of Criminal Justice based upon the contempt judgments against him. Restraint in this context is broadly construed, (citations omitted), so presumably a detainer filed with a prison inmate's custodian preventing the inmate's immediate release upon completion or release from a sentence is a sufficient restraint on a person's liberty to invoke a court's habeas corpus jurisdiction. But, insofar as the Court did not request briefing on the matter of applicant's restraint, the State will assume the Court is satisfied that applicant is

## Jurisdiction

The State claims that this "Court has jurisdiction to consider an original application for writ of habeas corpus arising from a trial court's contempt order." Article 5, Section 5(c), TEX. CONST., contains a broad grant of original habeas corpus jurisdiction to this Court. In relevant part, Article 5, Section 5(c), states that "[s]ubject to such regulations as may be prescribed by law," this Court "shall have the power to issue the writ of habeas corpus." *See State v. Briggs*, 351 S.W.2d 892, 894 (Tex.Cr.App. 1961) (this Court's original jurisdiction to issue writ of habeas corpus is "unlimited" subject to legislative regulation). It is well settled that the constitutional grant of original jurisdiction to this Court "to issue the writ of habeas corpus" permits this Court to review a contempt order entered by a district court. *See Ex parte Eureste*, 725 S.W.2d 214, 216 (Tex.Cr.App. 1986) (proper course of review from a contempt order entered in a district court is by original application for a writ of habeas corpus); *Ex parte Ramsey*, 642 S.W.2d 483, 484 n.1 (Tex.Cr.App. 1982) (same); *Ex parte Moorehouse*, 614 S.W.2d 450, 451 (Tex.Cr.App. 1981) (same).[8]

---

sufficiently restrained for the purpose of invoking its original habeas corpus jurisdiction, and will not attempt to address the matter of applicant's restraint further.

[8]

Judge Teague's dissenting opinion in *Ex parte Renier* thoroughly describes the "basic structure" of this Court's original habeas corpus jurisdiction and various legislative regulations of this jurisdiction. *See Ex parte Renier*, 734 S.W.2d 349, 354-74, 356 (Tex.Cr.App. 1987) (Teague, J., dissenting) (this Court has "virtually unlimited" original habeas corpus jurisdiction subject to regulation by the Legislature, "which has enacted laws limiting the exercise of these powers and prescribing procedures to effectuate them"); *compare Ex parte Davis*, 947 S.W.2d 216, 221-31 (Tex.Cr.App. 1996) (McCormick, P.J., concurring) (Article 11.071, TEX. CODE CRIM. PROC., is a valid legislative regulation of this Court's original habeas corpus jurisdiction and provides the exclusive procedures for the exercise of this Court's original habeas corpus jurisdiction to grant habeas corpus relief to an applicant seeking relief from a judgment imposing a penalty of death) (citing *Renier*, 734 S.W.2d at 362 (Teague, J., dissenting)); *see also Ex parte Smith*, 977 S.W.2d 610, 611 n.4 (Tex.Cr.App. 1998) (noting that Presiding Judge McCormick's concurring opinion in *Davis* "was joined by a majority of the Court and may be regarded as an opinion for the Court"). The

**Due Process**

The State argues that the trial court "correctly held [applicant] in contempt of court and ordered him punished for initially refusing to testify." The State, however, also claims that "the trial court's subsequent actions (1) directing and/or allowing the State to multiply the contempt violations by asking applicant additional questions and (2) holding applicant in contempt and further punishing him for refusing to answer those questions denied applicant due process of law."

The State asserts that the due-process issue is controlled by the United States Supreme Court's decision in *Yates v. United States*, 355 U.S. 66, 68-74 (1957). In *Yates*, a witness was held in criminal contempt eleven times on June 30 for her refusal to answer eleven questions relating to whether persons other than herself were communists. *See id*. The witness had been held in civil contempt on June 26 in the same proceeding for refusing to answer four questions that were similar to the ones that she refused to answer on June 30. *See id*. The witness' refusal to answer in *Yates* was not so absolute as it was in this case. *See id*. The witness in *Yates* answered most of the prosecution's questions and refused to answer only those questions that were "within a generally defined area of interrogation" (i.e., questions asking her to identify others as being communists). *See id*. The Supreme Court decided that the prosecution could not "multiply contempts by further questions within that area" and that the witness was guilty of "only one contempt." *See id*. The Court stated:

A witness, of course, cannot "pick and choose" the questions to which an answer will

---

discussion of the "basic structure" of this Court's original habeas corpus jurisdiction in Judge Teague's dissenting opinion in *Renier* is not contrary to the majority opinion in *Renier* and is consistent with well settled case law, cited in the body of this opinion, that this Court has original habeas corpus jurisdiction to review a contempt order entered by a district court. *See Renier*, 734 S.W.2d at 360 n.11, 364 (Teague, J., dissenting).

be given. The management of the trial rests with the judge and no party can be permitted to usurp that function. (Citation omitted). However, it is equally clear that the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers. (Citation omitted).

Even though we assume the Government correct in its contention that the 11 questions in this case covered more than a single subject of inquiry, it appears that every question fell within the area of refusal established by petitioner on the first day [June 26] of her cross-examination. The Government admits, pursuant to the holding of (citation omitted), that only one contempt would result if Mrs. Yates had flatly refused on June 26 to answer *any* questions and had maintained such a position. We deem it *a fortiori* true that where a witness draws the lines of refusal in less sweeping fashion by declining to answer questions within a generally defined area of interrogation, the prosecutor cannot multiply contempts by further questions within that area. The policy of the law must be to encourage testimony; a witness willing to testify freely as to all areas of investigation but one, should not be subject to more numerous charges of contempt than a witness unwilling to give any testimony at all.

Having once carved out an area of refusal, petitioner remained within its boundaries in all her subsequent refusals. The slight modification on June 30 of the area of refusal did not carry beyond the boundaries already established [on June 26]. Whereas on June 26 the witness refused to identify other persons as Communists, on June 30 she refused to do so only if those persons would be hurt by her identification. Although the latter basis is not identical to the former, the area of refusal set out by it necessarily fell within the limits drawn on June 26. We agree with petitioner that only one contempt is shown on the facts of this case.

*See Yates*, 355 U.S. at 73-74 (emphasis in original).[9]

---

[9]

The State cites various other authorities in support of the claim that it violates due process for applicant to be cited for more than one contempt. For example, in *United States v. Costello*, 198 F.2d 200, 204 (2nd Cir. 1952), *cert. denied*, 344 U.S. 521 (1952), the Second Circuit Court of Appeals stated:

We are of the opinion that the convictions on Counts 7, 9, 10 and 11 must be reversed. Each of those counts dealt with the defendant's refusal to answer a specific question put to him after he had flatly refused to give any further testimony on that particular day. Certainly the refusal to testify was an act in contempt of the Committee for which the defendant was subject to the punishment prescribed by the statute. But when the defendant made his position clear, the Committee could not multiply the contempt, and the punishment, by continuing to ask him questions each

We believe that where, as here, a witness indicates outside the jury's presence that he will not answer any questions and afterwards consistently maintains that position before the jury by refusing to answer any questions (except for introducing himself), *Yates* establishes, as a matter of due process, that only one contempt occurs. *See Yates*, 355 U.S. at 73 (only one contempt would have resulted "if Mrs. Yates had flatly refused on June 26 to answer *any* questions and had maintained such a position") (emphasis in original);[10] *Costello*, 198 F.2d at 204 (where witness has refused to testify, a committee cannot multiply his contempt by continuing to ask him questions each time eliciting the same answer). The prosecution can not make the witness liable for multiple contempts by putting the witness on the stand and getting him to refuse to answer multiple questions after the witness has previously indicated he will not testify. *See Yates*, 355 U.S. at 73-74; *Costello*, 198 F.2d at 204. We, therefore, agree with the State that "due process allows only one conviction for contempt." *See Yates*, 355 U.S. at 74.[11]

**The Remedy**

But, we disagree with the State's position that "only applicant's contempt conviction in

---

time eliciting the same answer: his refusal to give any testimony. In other words, the contempt was total when he stated that he would not testify, and the refusals thereafter to answer specific questions can not be considered as anything more than expressions of his intention to adhere to his earlier statement and as such were not separately punishable. (Citations omitted).

[10]

The State also argues that "it appears from *Yates* and the other cases mentioned that due process allows only one conviction for contempt where a witness asserting no valid privilege or excuse refuses to testify at all in a single proceeding, as applicant did in this case."

[11]

It is, therefore, unnecessary for us to address the second issue upon which we ordered briefing concerning whether applicant's sentence(s) violate Section 21.002(h)(1) of the Texas Government Code.

Cause No. 1036821 is valid" and that the "remaining twelve contempt convictions in Cause Nos. 1036822-1036833" are "void."  We believe that the appropriate remedy in this case is to set aside all thirteen contempt judgments (cause numbers 1036821 through 1036833) and to grant relief without prejudice to further proceedings in the District Court not inconsistent with this opinion.

The judgments in cause numbers 1036821 through 1036833 in the 248th District Court of Harris County, Texas, are set aside.  Copies of this opinion shall be sent to the Texas Department of Criminal Justice–Correctional Institutions Division and Pardons and Paroles Division.

Hervey, J.

Delivered: March 5, 2008
Publish