

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,510

### EX PARTE JOHN AVALOS ALBA, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM COLLIN COUNTY

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

### O P I N I O N

I concur in the Court's decision to dismiss this application for a writ of habeas corpus.

Although I agree with the Court that applicant's claim is not cognizable under Article

11.071,[1] I believe that a "lethal-injection protocol" claim may be brought as an original writ

application under the Texas Constitution, as a writ of prohibition if an execution date has

been set, or as a civil-rights lawsuit. I also believe that applicant is sufficiently close to an

execution date that his constitutional claim is ripe for review by this Court. I would

recharacterize this application as an original writ and dismiss applicant's claim pursuant to

---

[1] TEX. CODE CRIM. PROC. art. 11.071.

the Supreme Court's decision in *Baze v. Rees*,[2] our prior decision in *Ex parte O'Brien*,[3] and

the evidence submitted in this and other Texas death-penalty cases concerning the

constitutionality of the lethal-injection protocol. Applicant has failed to make a prima facie

showing of any constitutional violation.

**A.    This claim is not cognizable under Article 11.071.**

A writ application filed pursuant to Article 11.071 must seek "relief from a judgment

imposing a penalty of death."[4] Section 1 of that statute reads as follows:

> Notwithstanding any other provision of this chapter, this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death.[5]

A "death penalty 'writ' that does not challenge the validity of the underlying judgment and

which, even if meritorious, would not result in immediate relief from [a] capital murder

conviction or death sentence," is not a proper writ application for purposes of Article

11.071.[6] Opening Article 11.071 (and, by analogy, Article 11.07) to claims that a "condition

---

[2] 128 S.Ct. 1520 (2008).

[3] 190 S.W.3d 677 (Tex. Crim. App. 2006).

[4] Tex. Code Crim. Proc. art. 11.071, § 1.

[5] *Id.*

[6] *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002). The same is true of a post-conviction writ application filed in non-death-penalty cases under Article 11.07. *See also Ex parte Reyes*, 209 S.W.3d 126, 127 (Tex. Crim. App. 2006) (inmate may not challenge trial court's denial of post-conviction motion for DNA analysis by means of application for habeas corpus relief because "proceedings under Chapter 64 do not themselves challenge an inmate's conviction or sentence"); *Ex parte Lockett*, 956 S.W.2d 41, 41 (Tex. Crim. App. 1997) (relief sought under Art. 11.07 must request a change of either the fact or the length of confinement); *Ex*

or circumstance of an inmate's confinement amounts to an incremental restraint upon his residual liberty interest,"[7] would open a Pandora's Box of new and exotic "conditions of confinement" habeas claims and vastly increase the dockets of both trial courts and this Court. Applicant does not challenge his conviction. He does not challenge his death sentence. He does not even challenge the means of carrying out his death sentence by lethal injection.[8] He states:

> Mr. Alba is not challenging the method of execution (death by lethal injection) that exists in Texas. He is not alleging that the intravenous injection of *any* substance sufficient to cause his death constitutes cruel and unusual punishment, and he accepts that a substance may be injected to administer his lethal injection sentence. But, Mr. Alba is challenging the injection of the three drug cocktail as currently authorized under Texas law.[9]

His complaint focuses solely upon the specific lethal-injection protocol that the Texas Department of Criminal Justice (TDCJ) has implemented. He asserts that this methodology "has a strong likelihood of creating gratuitous suffering," and he relies upon a study commissioned by a defense lawyer in Florida which was reported, without peer review,[10] in

---

*parte Rieck*, 144 S.W.3d 510, 519 (Tex. Crim. App. 2004) (Art. 11.07 habeas claims "challenge the fact or duration of confinement (or restraint) rather than the conditions of confinement.").

[7] Dissenting Op. at 13.

[8] Texas law states that the death penalty is to be carried out by "intravenous injection of a substance or substances in a lethal quantity sufficient to cause death[.]" TEX. CODE CRIM. PROC. art. 43.14.

[9] Petition for Writ of Habeas Corpus at 14.

[10] *See Ex parte Aguilar*, No. WR-36,142-03, 2006 WL 1412666, at *2-3 (Tex. Crim. App. May 22, 2006) (Cochran, J., concurring) (raising concerns about the scientific reliability of the *Lancet* report and concluding that "this study raises questions but provides no answers") (not

the British medical journal, *Lancet*.[11]

This is not a claim that is cognizable under Article 11.071.  As the Supreme Court

stated in *Hill v. McDonough*,[12]–a Florida civil-rights action raising this same "lethal-injection

protocol" claim–when a lawsuit does not challenge the execution procedure mandated by

law, any relief concerning the method by which it is carried out would not imply that the

sentence itself was unlawful.[13]  In Texas, as in Florida, the specific drug mixture and the

---

designated for publication).

[11] In *Baze*, the United States Supreme Court noted the controversy surrounding this particular study.  128 S.Ct. at 1532 n.2.  It stated,

> [S]hortly after the Lancet study appeared, peer responses by seven medical researchers criticized the methodology supporting the original conclusions.  See Groner, Inadequate Anaesthesia in Lethal Injection for Execution, 366 Lancet 1073-1074 (Sept.2005).  These researchers noted that because the blood samples were taken "several hours to days after" the inmates' deaths, the postmortem concentrations of thiopental–a fat-soluble compound that passively diffuses from blood into tissue–could not be relied on as accurate indicators for concentrations during life.  *Id.,* at 1073.  The authors of the original study responded to defend their methodology. *Id.,* at 1074-1076. . . .
>
> We do not purport to take sides in this dispute.  We cite it only to confirm that a "best practices" approach, calling for the weighing of relative risks without some measure of deference to a State's choice of execution procedures, would involve the courts in debatable matters far exceeding their expertise.

*Id.  See also Ex parte Aguilar*, *supra* note 10; *Rutherford v. State,* 926 So. 2d 1100, 1113-14 (Fla. 2006) (rejecting the argument that the study published in *The Lancet* presented new scientific evidence that Florida's lethal-injection procedure possibly created a foreseeable risk of the gratuitous infliction of unnecessary pain on the person being executed), *cert. denied,* 546 U.S. 1160 (2006).

[12] 547 U.S. 573, 580 (2006).

[13] *Id*. at 582 (stating that when a lawsuit does not challenge the procedure mandated by statute, relief would not imply the unlawfulness of the sentence, but noting, "If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper.").

specific protocol for administering those drugs is not mandated by statute.[14] Thus, in this case, even if we were to find that applicant's concerns about the Texas lethal-injection protocol were valid, his conviction for capital murder and death sentence by lethal injection would remain intact. Only the specific method by which TDCJ has chosen to implement the death sentence by lethal injection would be subject to revision if the current methodology were found to violate the Eighth Amendment. This claim challenges the *manner* by which an administrative agency has, in its discretion, implemented an admittedly lawful punishment. This is a circumstance-of-punishment allegation, one that is routinely examined under 42 U.S.C. § 1983 as a civil-rights complaint; it is not a challenge to the conviction or sentence.[15]

Applicant could certainly bring this civil-rights claim in either federal or Texas state court. It has been done by many other death-row inmates, and it was done in the case so

---

[14] Article 43.14 of the Code of Criminal Procedure states,

Whenever the sentence of death is pronounced against a convict, the sentence shall be executed at any time after the hour of 6 p.m. on the day set for the execution, by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead, such execution procedure to be determined and supervised by the Director of the institutional division of the Texas Department of Criminal Justice.

TEX. CODE CRIM. PROC. art. 43.14.

[15] *Hill*, 547 U.S. at 583 (Florida death-row inmate's challenge to the three-drug lethal-injection protocol properly brought as a civil-rights lawsuit instead of an application for habeas corpus relief because "it could not be said that the suit seeks to establish 'unlawfulness [that] would render a conviction or sentence invalid'") (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 (1994)).

recently decided by the United States Supreme Court.[16]  But this Court might also entertain an original writ of habeas corpus filed pursuant to the Texas Constitution in a death-penalty case when Article 11.071 cannot be invoked because of the explicit limitation of Section 1.

I would recharacterize applicant's complaint as an action brought pursuant to this Court's original habeas corpus jurisdiction under Article V, § 5 of the Texas Constitution.[17]  Although Article 11.071 provides the exclusive procedures for a writ in which a death-row inmate may seek habeas relief from his conviction or sentence, no Texas statute limits the authority or jurisdiction of this Court to consider an original habeas application by such an inmate seeking relief from an unconstitutional *manner* of carrying out his admittedly lawful sentence.[18]  Although we have the authority to exercise original-writ jurisdiction under the Texas Constitution, that is a power that we should exercise with great caution.  Nonetheless,

---

[16] *Baze v. Rees*, 128 S.Ct. 1520 (2008).

[17] Article V, § 5(c) of the Texas Constitution reads as follows:
Subject to such regulations as may be prescribed by law, the Court of Criminal

Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and, in criminal law matters, the writs of mandamus, procedendo, prohibition, and certiorari.  The Court and the Judges thereof shall have the power to issue such other writs as may be necessary to protect its jurisdiction or enforce its judgments.  The court shall have the power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.

[18] *State ex rel. Wilson v. Briggs*, 351 S.W.2d 892, 894 (Tex. Crim. App. 1961) (orig. proceeding) ("The original jurisdiction of this court to issue writs of habeas corpus is unlimited."); *see also Ex parte Thompson*, ___ S.W.3d __, ___, No. AP-75,720, 2008 WL 696476, at *2 (Tex. Crim. App. March 5, 2008) (quoting *Briggs* and stating that the Court's original jurisdiction to issue writs of habeas corpus permits it to review a trial court's contempt order).

given the gravity of the claim presented and the inability of a Texas civil court to enjoin the carrying out of a lawful criminal sentence in the context of a civil-rights lawsuit,[19] I would exercise it in this specific situation.

## B.    Applicant's Claim is Ripe for Consideration.

We have held, in both published and unpublished opinions, that a claim concerning the lethal-injection protocol is not ripe for review in a direct appeal of a capital-murder conviction and sentence.[20]  I have previously stated that such a claim "certainly is ripe for review once an execution date is set."[21]  We have never decided whether a lethal-injection claim is ripe for consideration in an original habeas application after direct appeal, but before an execution date has actually been set.  I would hold that an execution is sufficiently "imminent" after the direct-appeal process is complete such that a claim concerning the method of execution may be ripe for review in a later original habeas corpus application.  A

---

[19] *See State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 395-96 (Tex. Crim. App. 1994) (orig. proceeding) (holding that any order by another state court purporting to stay an execution unlawfully circumvents the exclusive jurisdiction of the Court of Criminal Appeals in a death-penalty conviction).

[20] *See Gallo v. State*, 239 S.W.3d 757, 780 (Tex. Crim. App. 2007) (holding, on direct appeal of capital conviction, that defendant's execution is not "imminent," thus the "method in which the lethal injection is currently administered is not determinative of the way it will be administered at the moment of [defendant's] execution"); *see also Richardson v. State*, No. AP-75,200, 2008 WL 217973, at * 5 (Tex. Crim. App. Jan. 23, 2008) (not designated for publication) (same); *Thompson v. State,* No. AP-73,431, 2007 WL 3208755, at *6 (Tex. Crim. App. Oct. 31, 2007)  (not designated for publication) (lethal-injection-protocol claim "is not ripe for review on direct appeal"); *Doyle v. State*, No. AP-74,960, 2006 WL 1235088, at *4 (Tex. Crim. App. May 10, 2006) (not designated for publication) (same).

[21] *Ex parte O'Brien*, 190 S.W.3d 677, 679 n.2 (Tex. Crim. App. 2006) (Cochran, J., concurring).

death-row inmate need not wait until the moment of execution, or even the day after his execution date has been set, to challenge the administrative procedure by which his sentence is to be carried out. "Imminence" is a matter of degree; it is not a matter of pluperfect timing with a race to the courthouse against a 30-day execution deadline. Furthermore, the United States Supreme Court did not find that a death-row inmate was required to wait until an execution date was set before it would consider a claim relating to the constitutionality of the lethal-injection protocol filed in a declaratory judgment lawsuit.[22]

The direct appeal of a person convicted of capital murder and sentenced to death may take several years to proceed from the trial court to this Court and, perhaps, to the Supreme Court. But that is only the beginning of the review of a death-penalty case. At least one full round of habeas corpus review in both state and federal courts will generally be conducted as well. According to the TDCJ, the average length of time from the imposition of a death sentence until its execution is 10.26 years.[23] Given the extraordinary length of time between conviction and execution, one would not be amiss in thinking that TDCJ might modify its lethal-injection protocol in the interim.

Applicant, however, was first sentenced to death in May, 1992–sixteen years ago. This Court affirmed his sentence on direct appeal in 1995,[24] but that sentence was vacated

---

[22] *See Baze v. Rees*, 128 S.Ct. 1520, 1529 (2008).

[23] "Death Row Facts," Texas Department of Criminal Justice, http://www.tdcj.state.tx.us/stat/drowfacts.htm (last visited June 9, 2008).

[24] *Alba v. State*, 905 S.W.2d 581 (Tex. Crim. App. 1995).

by the Fifth Circuit in 2000.[25] After a retrial on punishment, applicant was again sentenced to death, and that sentence was affirmed by this Court in 2003–five years ago.[26] In that same year, we denied relief on his application for a writ of habeas corpus filed pursuant to Article 11.071.[27] In May of 2005, applicant filed a writ of habeas corpus in federal district court. The federal court then granted applicant's motion to stay further proceedings until he had exhausted a newly raised claim concerning the constitutionality of the Texas lethal-injection protocol in state court. That is the claim presently pending before this Court. Thus, applicant is well down the winding road of appellate review of his death sentence. Given the federal court's stay in its proceedings to give Texas state courts an opportunity to assess the merits of applicant's lethal-injection claim before the federal courts do so, we should not reject that opportunity on the basis of ripeness. Applicant's execution is sufficiently imminent (as the relatively slow wheels of justice grind in death-penalty cases) to consider whether he has made a colorable constitutional claim. I would do so.

**C.     Applicant Has Not Made a Prima Facie Showing of a Constitutional Violation.**

In the context of an Article 11.071 subsequent writ application, an applicant fails to surmount the Section 5 procedural bar to allow for the consideration of the merits of a

---

[25] *Alba v. Johnson*, 232 F.3d 208 (5th Cir. 2000).

[26] *Alba v. State*, No. 71,487, 2003 WL 1888989 (Tex. Crim. App. April 16, 2003) (not designated for publication).

[27] *Ex parte Alba*, No. WR-36,711-02 (Tex. Crim. App. Oct. 15, 2003).

subsequent claim if he fails to make a prima facie showing of a constitutional violation.[28]

This is a state-law procedural bar that the Legislature has enacted and that this Court must enforce. In those cases, we dismiss the subsequent application without returning it to the trial court to make factual findings because we have already determined that the applicant has not pled sufficient facts that, even if proven, could support relief. I would apply that same procedural bar to any claim brought pursuant to our constitutional original writ authority.

In the present case, then, applicant was required to plead sufficient facts that, if proven, would support relief on his constitutional claim that the current TDCJ lethal-injection protocol violates the Eighth Amendment. This he has not done. The United States Supreme Court upheld the constitutionality of the Kentucky lethal-injection protocol in *Baze* over a month ago.[29] Applicant based his Eighth Amendment claim upon the very similar protocol that is employed by Kentucky. He has not filed any supplemental pleadings since *Baze* in an attempt to distinguish the Kentucky protocol from that used in Texas. TDCJ, however, has filed a post-*Baze* supplemental pleading in an allied case, *Ex parte Chi*, also delivered this day,[30] in which it graphically charts the similarities between the Texas and Kentucky

---

[28] *Ex parte Brooks,* 219 S.W.3d 396, 400-01 (Tex. Crim. App. 2007) (noting that, in a subsequent application, a habeas applicant must make a prima facie showing of facts that establish a cognizable constitutional claim); *Ex parte Staley,* 160 S.W.3d 56, 64 (Tex. Crim. App. 2005).

[29] The decision in *Baze* was delivered on April 16, 2008. 128 S.Ct. at 1520.

[30] *Ex parte Chi*, No. AP-75,930 & AP-75,931, ___ S.W.3d ___ (Tex. Crim. App. June 9, 2008).

lethal-injection protocols.[31]   Based upon TDCJ's supplemental pleading, I can find no constitutionally relevant dissimilarities between the two protocols.   Applicant does not suggest otherwise.   Further, this Court has previously rejected such "lethal-injection protocol" claims that were brought in subsequent writs filed under Article 11.071 as procedurally barred because they did not make a prima facie showing of a constitutional violation.[32]   For all of the reasons that this Court sets out in rejecting the lethal-injection protocol claim in *Ex parte Chi*, I would reject applicant's same claim in this case, regardless of whether that claim may be addressed under Article 11.071 or as an original writ.   The appropriate mechanism for doing so is by dismissing the writ because it does not plead sufficient facts to support relief, even if the applicant could prove the specific facts that he alleges.

I therefore concur in the Court's dismissal of applicant's writ application.

Filed:  June 9, 2008

Publish

---

[31] *See* Supplemental Brief of the Texas Department of Criminal Justice, Correctional Institutions Division, filed on May 9, 2008.

[32] *Ex parte O'Brien*, 190 S.W.3d 677, 678 (Tex. Crim. App. 2006) (dismissing subsequent habeas corpus application that raised lethal-injection-protocol claim); *Ex parte Moore*, No. WR-51,910-02, 2007 WL 117702, at *1 (Tex. Crim. App. Jan. 16, 2007) (not designated for publication) (dismissing subsequent habeas corpus application as procedurally barred by Section 11.071, § 5 because applicant failed to make a prima facie case that the Texas lethal-injection protocol violated the constitution); *Ex parte Aguilar*, No. WR-36,142-03, 2006 WL 1412666 (Tex. Crim. App. May 22, 2006) (not designated for publication) (same).