Motion for leave to file an application for an original writ of habeas corpus and request for bond denied.
Adam Reposa, applicant, is a licensed Texas attorney who has been confined in jail for over a month for contempt of court after he spoke disrespectfully to a county court judge and behaved inappropriately during a misdemeanor trial. In his current pleadings before this Court, applicant contends that the judgment of contempt is a nullity or must be reversed for two independent and alternative reasons. He contends that the judge who originally held him in contempt erred by failing to adhere to statutory and constitutional requirements pertinent to direct contempt. Alternatively, he argues that the judge conducting the contempt trial erred by denying him his right to a jury trial to which he was entitled because his six month day-for-day jail sentence is the equivalent of a one-year jail sentence that would ordinarily be served through two days of credit for every one day served in jail. In conjunction with this pleading, applicant renews his request that this Court order his release on bond pending an ultimate decision on the merits of this original habeas application. Today, this Court denies applicant's motion for leave to file his application and his request for bond. I respectfully disagree with this Court's resolution of this case for two reasons. First, as I said in my earlier dissenting opinion several weeks ago with respect to applicant's confinement *187 under this contempt order, he is entitled to bond pending the resolution of his challenges. Applicant is not a flight risk given that he is an officer of the court and has continually appeared in multiple courts in an effort to seek relief from this contempt order, he is not a risk to the safety of the judges or community, and his continued confinement for the next five months will render moot his legal challenges that likely will not be resolved within that period of time. I, therefore, would immediately grant his request for personal bond pending the outcome of this original writ proceeding. Second, unlike this Court's decision that denies applicant leave to file, I would instead order applicant to file a supplemental brief within the next ten days explaining the details of litigation pending in other courts related to this contempt proceeding and addressing whether he has any other adequate remedy at law. Assuming that applicant would be able to demonstrate a lack of any other adequate remedy at law, I would file and set his case to consider his claims on their merits. I, therefore, respectfully dissent from this Court's decision denying the motion for leave to file an application for an original writ of habeas corpus and denying applicant's request for bond.
I. Background
Although the events at issue in this case have transpired over the course of less than a year, the procedural history is somewhat lengthy. My review of the procedural history includes the events leading up to and during the contempt of court hearing, applicant's arrest and efforts to obtain bond from multiple trial-level courts, his first request for relief in this Court, his actions in a Williamson County court, and his instant litigation filed in this Court.[1]
A. Events Leading Up to and During the Contempt of Court Hearing
On March 27, 2017, applicant was acting as defense counsel in a trial occurring in the courtroom of Judge Nancy Hohengarten of Travis County Court at Law No. 5. According to that court, applicant behaved disrespectfully towards the court in five instances during jury selection. Those alleged instances were: (1) applicant refused to come to the bench after being summoned by the court; (2) applicant continued to question the venire panel when the court was attempting to have a bench conference outside the hearing of the venire; (3) applicant continued to question a venire person after the court instructed the juror not to answer the question; (4) applicant stated within the hearing of the venire panel, "I want to show the people how hard it is to get a fair trial in this court and that's what I'm doing"; and (5) applicant spoke in a tone and tenor that was disrespectful when addressing the court. Based on this misconduct by applicant, Judge Hohengarten declared a mistrial, and she indicated that she was preparing to have applicant held in contempt of court. She stated that she would be "getting [applicant] the motion for contempt and [she would] be letting the presiding judge know so that ... a judge can be appointed to hear the contempt." She then stated, "I'm not taking you into custody. I'm just notifying you that I am going to have that drafted and delivered, Okay?"
*188 Judge Hohengarten later issued a written order finding applicant "in direct criminal contempt of court for behavior and statements made in open court in the presence of a jury panel and the parties[.]" The order indicated that applicant had committed the five acts set forth above in contempt of court. Judge Hohengarten requested that another judge be appointed to hear the contempt matter.[2]
On April 4, Judge Paul Davis, sitting by assignment in Travis County, presided over applicant's contempt proceeding, and this summer, he had preliminary settings at which applicant failed to appear. According to the State, twice in June applicant failed to appear for a hearing on the contempt cause, and Judge Davis eventually issued a capias for applicant's arrest. Around this same time, applicant filed an application for a writ of habeas corpus in Williamson County challenging the issuance of the capias because a sentence was never imposed directly by Judge Hohengarten. At some point, Judge Davis ordered a competency hearing and recalled the capias, but according to the State, applicant continued to fail to appear in court as required.
On September 11, with applicant present in court, Judge Davis heard evidence on the contempt complaint. Nine days later, Judge Davis found applicant guilty as to all five instances of contempt that had been described by Judge Hohengarten, and he sentenced applicant to six months' confinement to be served day-for-day as to each instance of contempt, with the sentences to run concurrently. Judge Davis made the following findings in support of the judgment:
1. Applicant's behavior reflected an "overall strategy to attempt to have members of the jury disrespect the law, the trial judge, the facts of the case and engage in jury nullification."
2. Applicant has previously been held in contempt of court in 2008, at which time applicant was sentenced to 90 days of confinement. See Ex parte Reposa , No. AP-75,695 2009 WL 3478455 (Tex. Crim. App. Oct. 28. 2009). Applicant's "contumacious conduct continues to this day."
3. Prior to the instant contempt proceeding, applicant posted two videos online, one on July 11 and one on August 9, which were disrespectful to the trial judge and the prosecutors.[3]
4. Applicant had made other statements "to and about the prosecutors," including statements that were "harassing, intimidating, disrespectful, gross, and hostile." Applicant had "recently prepared and circulated demeaning and disrespectful drawings superimposed over pictures of the Court, Judge Hohengarten and one of the prosecutors, ostensibly for an advertisement for a (non-law related) business owned by [applicant]."
5. The evidence reflected applicant's efforts "to intentionally obstruct the trial *189 proceedings on March 27, 2017, to intentionally obstruct and demean this Court during the pendency of this proceeding, to attempt to intimidate and harass the prosecutors in this case, and to demean the judge of the Court in which [applicant] was appearing on March 27, 2017[.]" The evidence further reflected "a definite pattern of conduct by [applicant] that is totally improper and incompatible with [applicant's] obligations as an attorney in our legal system." "When a lawyer disagrees with a judge's ruling, the proper course of action is to request a hearing outside the presence of the jury, make a complete record of the error to preserve it for appellate review, and then take the matter to the appellate court. It is improper to attempt to show the judge's error to the jury or jury panel, in an effort to convince the jury of the unfairness of the court."
6. Applicant's tactics had the effect of "bringing the legal system into disrepute."
On applicant's motion, the contempt court stayed execution of the sentence until it could consider applicant's bond request, but the court subsequently denied his request and ordered him to commence serving his sentence.
Applicant, through counsel, filed a "Motion for Rehearing of Application for Writ of Habeas Corpus" and a "Second Amended Application for Writ of Habeas Corpus" in Travis County Court at Law, No. 5. The motion was heard by Judge Sid L. Harle, sitting for Judge Hohengarten by designation. Applicant was absent from the hearing but represented by counsel. Judge Harle denied applicant's motions and an oral motion to grant him bond or, alternatively, to reform the sentence.
B. Applicant's Arrest and Efforts to Obtain a Bond Through Trial-Level Courts
On October 6, applicant was arrested in Williamson County for the contempt judgment, and he was transferred to Travis County, where he began serving his contempt sentence. In the few days before and after his arrest, applicant sought a bond from multiple trial-level judges, but he has remained confined in jail since his arrest.
Two judges have granted bonds for applicant that have not been effectuated through his release. Judge Tamera Needles, Presiding Judge of the 427 District Court of Travis County, initially denied applicant's request for bond, but later she granted him a bond. Judge Rick Kennon, Presiding Judge of the 368 Judicial District Court of Williamson County, granted applicant a bond releasing him from confinement on the capias that was issued in Travis County, but applicant has not been released from confinement.
th
th
C. The Proceedings in this Court
About one month ago, on the same day that he was taken into custody, applicant filed in this Court an emergency motion for stay and/or motion for bond pending the filing of a writ of habeas corpus. In his motion, applicant indicated his intent to invoke this Court's original habeas jurisdiction by filing an original writ of habeas corpus challenging the judgment of contempt. He explained that he had been unable to file his writ application at that time because the record "cannot be obtained immediately." Applicant requested that this Court either stay the execution of the judgment of contempt or, alternatively, grant him a personal bond pending the outcome of the writ proceedings. The State filed its response and an amended response opposing applicant's motion for a stay or bond. In its amended response, the State argued that applicant was not entitled to bond. It observed that the exclusive *190 means of review of a criminal contempt judgment is through an original writ application to this Court, and it noted that applicant had not yet filed any such application. It further noted that the exclusive authority to grant a bond under these circumstances lies with the appropriate appellate court when it has issued the writ of habeas corpus and return is made.[4] Given the lack of any pending writ application in this Court, the State argued that granting applicant a personal bond would be premature at that juncture. The State also argued that applicant should not be granted bond because he is a "significant flight risk," as shown by his failure to appear for prior court settings in this matter.
On October 11, this Court denied applicant's motions for stay and personal bond. I dissented from this Court's denial of bond. See Ex parte Reposa , No. WR-86,973-03 (Tex. Crim. App. Oct. 11, 2017) (Alcala, J., dissenting) (urging this Court to grant applicant a personal bond with an electronic monitor and with a condition that any habeas application be filed within ten days).
After this Court refused to take action on applicant's first filings in this Court, applicant attempted to obtain relief from the contempt order by filing an application for a writ of habeas corpus in the 368 District Court of Williamson County where Judge Kennon presides. That court issued a bench warrant to transfer applicant from confinement in Travis County to Williamson County, and the Travis County Sheriff's Office complied with that order.
th
The State filed a petition for a writ of prohibition in the Third Court of Appeals and other emergency pleadings contending that Judge Kennon had no jurisdiction over the Travis County contempt order and that he lacks any authority to issue a writ for a contempt judgment arising in Travis County. The State contended to the Third Court that only this Court has jurisdiction to hear a challenge to the contempt order.
On October 12, the Third Court of Appeals issued a stay of the Williamson County proceedings.[5] The Third Court also invited applicant to provide any response to the State's petition, and he responded. Applicant represented to the Third Court that the Williamson County District court has original jurisdiction to issue and grant writs of habeas corpus. Applicant maintains that the Court of Criminal Appeals has jurisdiction to hear challenges to contempt orders but that this Court's exclusive jurisdiction does not vest until an application for a writ of habeas corpus has been accepted. Applicant contends that the Third Court lacks jurisdiction to hear habeas *191 writs, and that by staying the proceedings in the Williamson District Court, the Third Court has acted in violation of the Texas Constitution. Applicant contends that under Article I, Section 12 of the Texas Constitution, the Third Court should deny the State's petition for prohibition and mandamus because the State has an adequate remedy at law through an appeal of the Williamson County's grant or denial of habeas relief.
E. The Instant Pleadings Before this Court
On October 16, applicant filed an application for an original writ of habeas corpus and a motion for leave to file that application. Applicant contends in his instant application that the contempt proceedings against him violated due process, both due to Judge Hohengarten's departure from the statutory requirement that she impose sentence immediately to allow applicant to purge himself of the contempt,[6] and due to the fact that Judge Davis did not permit applicant to have a jury trial. For each of these independent reasons, applicant contends that the judgment ordering his confinement for direct criminal contempt is void, and he asks this Court to grant him relief from the judgment and sentence.
After he filed his instant pleadings, applicant renewed his request for bond by filing a "Motion for Emergency Personal Bond, Bail, Or Personal Recognizance Bond Pending Appeal" in this Court. The State filed a response opposing applicant's request for bond. In that pleading, the State cites applicant's history of failing to appear as a justification to entirely deny him bond in this case. Although the State recognizes that this Court has authority to order applicant released on bond pending a resolution of his claims on the merits,[7] the State contends that this Court should exercise its discretion to deny applicant release due to the flight risk.
After the State's response, applicant filed a "Request for Temporary Relief Pending the Petition for Original Writ of Habeas Corpus." In that pleading, applicant seeks release with the condition that he wear an electronic monitor while this Court rules on the legality of his contempt finding and sentence. Applicant contends that he is not a flight risk and that denying him temporary release during the pendency of this original habeas proceeding would effectively require him to serve his entire sentence before this Court could evaluate the merits of his habeas claims.
On October 30, applicant filed a "Second Request for Temporary Relief Pending the Petition for Habeas Corpus" in which he renewed his pleas for this Court to exercise its discretion and grant him bond pending the outcome of this habeas proceeding. In that pleading, applicant explains that his offense is the equivalent of a mere petty misdemeanor offense that is appropriate for a bond, particularly when he is compared to defendants convicted of murder, child molestation, and other serious crimes who are regularly released on appeal bonds. With respect to the State's suggestion that he is dangerous, applicant responds that the only harm he poses to the community of courts is the "potential infliction of annoyance and irritation to judicial sensibilities."
II. Applicant Should Be Released On Bond During the Pendency of His Habeas Proceedings
Because he is not a significant flight risk, and because he remains an officer of the court, I would immediately order applicant released on bond during the pendency *192 of these original habeas proceedings. Pursuant to Code of Criminal Procedure Article 11.32, entitled "Custody Pending Examination," this Court has the authority to release a person who has pending habeas proceedings before it. See TEX. CODE CRIM. PROC. art. 11.32 ; see also Ex parte Eureste , 725 S.W.2d 214, 216 (Tex. Crim. App. 1986) (explaining that, once this Court's original habeas jurisdiction is invoked, it is "the only court that may determine whether the applicant may be allowed bail or required to remain in jail"). This Court thus has the authority to release on bond an individual such as applicant who has been held in contempt of court during the pendency of his original habeas proceedings challenging that judgment.[8]
The State has conceded that a bond is generally appropriate in this type of case, but it urges this Court to deny applicant a bond in light of his failure to appear at several prior court settings related to this case. Although it is true that the record reveals several instances of applicant's failure to appear for court settings on his contempt case, it is also true that he has appeared for other court settings on this same contempt case. Based on the totality of the record, it cannot be rationally argued that applicant is a flight risk. He has not fled the jurisdiction. Instead he has consistently attempted to obtain relief through other trial courts in Travis and Williamson Counties. He is a licensed attorney who misbehaved in court by speaking rudely to the judge and behaving inappropriately, but he did not threaten her, become violent in court, or commit any act that would suggest he poses a risk to the safety of any judge or the community. If there is any concern that he is even remotely a flight risk, his bond conditions may require him to wear an electronic monitor. There is absolutely no reason to deny a bond to applicant. Given that violent offenders, police assaulters, kidnappers, human traffickers and the like, whose sentences are ten years or less and who appeal their judgments of conviction may obtain bail on appeal irrespective of their chances of success,[9] this Court should not deny a bond to an attorney whose offense was speaking rudely to a judge and behaving inappropriately during the course of a jury trial. I can see absolutely no reason that justifies applicant's continued detention at this juncture, and I cannot agree that applicant is less deserving of release pending the outcome of this habeas proceeding than a violent offender would be pending the outcome of his direct appeal.
Perhaps this Court is unsympathetic to applicant's plight given that this is the second time that this Court has been called upon to review a contempt judgment against him, but the way that this Court handled that prior proceeding is instructive as to how this type of case should be treated. The last time applicant sought original habeas relief in this Court from a contempt order in 2008, this Court granted him release on his own recognizance during the pendency of his case.[10] Although this Court later denied relief on the merits of his claims and upheld the contempt judgment and sentence, applicant did not flee the jurisdiction during his release or *193 attempt to evade punishment for the contempt.[11] In view of this history, and given that applicant is a licensed attorney with an active law practice and community ties, I cannot agree that he presents a flight risk so as to warrant denial of bond under these circumstances. This Court should abide by our prior procedures for granting bond in this type of situation.
This is now my second dissenting opinion objecting to this Court's denial of a bond to applicant, and I continue to conclude that a bond is appropriate in this case regardless of whether applicant will ultimately prevail in his challenges before this Court or another court. Regardless of whether the record ultimately shows that applicant's complaint should be resolved by this Court or by another court, applicant has been in custody for over a month when he should be out on bond. Twice, applicant has had bonds granted by trial-level courts, but he has remained confined. As this State's highest criminal court, we have jurisdiction over applicant's pending original habeas application challenging the order of contempt, we have jurisdiction to determine our jurisdiction, and we have jurisdiction to grant applicant a bond pending our resolution of his case. We have the responsibility to exercise our authority to remedy the injustice of applicant's continued confinement under circumstances in which a bond is appropriate. I, therefore, would immediately order the release of applicant under a personal bond with a condition that he wear an electronic monitor.
III. Applicant Should Be Permitted To File Supplemental Brief Addressing Pending Litigation and the Absence of Any Other Adequate Remedy at Law
In his current pleadings before this Court, applicant challenges the validity of the contempt proceedings in this case, which he asserts were conducted in contravention of clear statutory authority that contemplates an immediate punishment and an opportunity for a contemnor to purge himself of the contempt at the time that it occurs. See TEX. GOV'T CODE § 21.002(d). He also contends that, even assuming that the proceedings were not invalid due to a violation of Section 21.002, he was entitled to a trial by jury, which was a right not waived by him, and thus the proceedings were flawed for that reason.
I note that, with respect to whether it is proper for applicant to invoke this Court's original habeas jurisdiction under these circumstances, on page two of his application, applicant includes a section entitled, "Statement of Jurisdiction." In that section, in addition to citing this Court's original habeas jurisdiction pursuant to Article V, Section 5, of the Texas Constitution, applicant argues that this Court is "the only reviewing court which possesses the general and unlimited power to issue writs of habeas corpus in criminal cases." In support, he cites this Court's opinion in State ex rel. Wilson v. Briggs, 171 Tex.Crim. 479, 351 S.W.2d 892 (1961). Thus, although he does not use the magic words, "no other adequate remedy at law," to me it appears that applicant has made at least some argument that no other court can afford him ultimate relief from the contempt judgment.
Regardless of whether applicant has demonstrated in his pleadings that he has no other adequate remedy at law, this Court's precedent has established that there is no other remedy in a direct-contempt case and that this type of judgment is properly challengeable by an original *194 habeas writ presented to this Court. See, e.g., Ex parte Thompson, 273 S.W.3d 177, 180 (Tex. Crim. App. 2008) ; Ex parte Curtis , 568 S.W.2d 363, 363 (Tex. Crim. App. 1978) (observing that habeas application challenging judgment of criminal contempt is "properly before us as an original writ of habeas corpus, and we will entertain it as such"). In Thompson , this Court, citing the same case as the one cited by applicant, Briggs , explained that "this Court's original jurisdiction to issue [the] writ of habeas corpus is 'unlimited' subject to legislative regulation." 273 S.W.3d at 181 (citing Briggs , 351 S.W.2d at 894 ). This Court continued, "It is well settled that the constitutional grant of original jurisdiction to this Court 'to issue the writ of habeas corpus' permits this Court to review a contempt order entered by a district court." Id. (citing Eureste , 725 S.W.2d at 216 (proper course of review from a contempt order entered in a district court is by original application for a writ of habeas corpus); Ex parte Ramsey , 642 S.W.2d 483, 484 n.1 (Tex. Crim. App. 1982) (same); Ex parte Moorehouse, 614 S.W.2d 450, 451 (Tex. Crim. App. 1981) (same)).[12] Because it is well established by this Court's precedent that the proper procedure for challenging a direct-contempt judgment is through an original writ application to this Court, it is largely immaterial whether applicant has included pleadings demonstrating that there is no other adequate remedy at law.[13] I would follow this Court's precedent that has determined that only this Court has jurisdiction in this type of case, and I would permit further briefing to address how the pending litigation may impact this Court's jurisdiction, if at all. I, therefore, would hold the application in abeyance rather than deny leave to file.
IV. Assuming Applicant Can Show that He Has No Other Adequate Remedy, This Application Should Be Filed and Set
I do not attempt to resolve the merits of applicant's claims in this dissenting opinion. I do, however, briefly address the substance of applicant's claims to show that, assuming he would be able to demonstrate that he has no other adequate remedy at law, the claims warrant full consideration by this Court on their merits.
In his first claim, applicant asserts that the contempt proceedings are a nullity and the order of contempt is void. Applicant cites the contempt statute, Government Code Section 21.002, in support of his contention that Judge Hohengarten violated applicant's statutory and due-process rights by declining to directly impose a punishment for the contempt, thereby depriving him of the opportunity to purge himself of the contempt immediately. See TEX. GOV'T CODE § 21.002(d).[14] Applicant *195 argues that "the governing statute contemplates a contempt action, the attorney's summary restraint or confinement, and the attorney's motion for release before the other express due process provision, i.e., hearing before a disinterested judge, arises." Applicant asserts that Judge Hohengarten misinterpreted the statutory requirements for direct contempt by finding him guilty of contempt but then declining to impose any punishment or restraint, instead delegating the matter of applicant's punishment to Judge Davis. He states,
The offending court has a choice when directly confronted with contemptuous behavior. The court can take some remedial action short of summary punishment or find the offender in direct criminal contempt and restrain him. But under this statutory scheme, it cannot find the court officer guilty of direct contempt, then treat the matter as if it were a case of indirect contempt. To do so effectively nullifies the process the Legislature created and confuses direct and indirect contempt.
Applicant asserts that this departure from the ordinary procedure for holding an attorney in direct contempt deprived him of his opportunity to purge himself of the contempt by submitting to his punishment, and he asserts that that deprivation implicates due-process concerns. Applicant additionally challenges the validity of the subsequent proceedings under Judge Davis on this same basis, and he also asserts that the sentence imposed directly by Judge Davis was invalid because the "contempt statute assumes the offended judge has already assessed the penalty," and the Legislature "did not contemplate or authorize the appointed judge to determine the sentence."
In his second claim, applicant challenges the contempt proceedings under Judge Davis on the additional basis that he was denied his right to a trial by jury. Applicant contends that, although contempt ordinarily is punishable by up to six months' confinement and thus it would not trigger the right to a trial by jury, he was entitled to a trial by jury under these circumstances due to the particular sentence that was imposed against him. Specifically, applicant asserts that, by requiring him to serve six months day-for-day without the opportunity to earn good-conduct time, Judge Davis's punishment has necessarily extended his jail term beyond that allowable for petty criminal offenses. He states, "By ordering the sheriff to withhold any credit for [applicant's] good conduct while in confinement, [Judge Davis] has transformed a six-month sentence to a one-year sentence. In effect, [Judge Davis] imposed a serious punishment for what is otherwise a petty offense. [Applicant] is serving not a 180-day sentence, but a sentence of a year." In light of this, applicant asserts that he was entitled to a trial by jury, which is a right he did not waive.
I summarize these claims at this juncture without expressing any view as to their ultimate merits. I would file and set this case and order full briefing from the parties addressing these issues.
Applicant has a history of engaging in contemptuous conduct that has resulted in a judgment of contempt for which he has *196 been ordered to serve six months in jail day-for-day. Applicant has filed an application for an original habeas writ that presents multiple challenges to his contempt judgment. He has already been confined pursuant to the contempt order for one month, and further delays in considering this matter will likely render his claims moot. Because applicant is neither a flight risk nor a danger to anyone, I would immediately grant applicant a personal bond with electronic monitoring. I would then order the filing of supplemental briefing from applicant addressing the pendency of other litigation in this case. Assuming that the record demonstrates there is no other adequate remedy going forward, I would file and set this case for consideration on its merits. Because this Court instead denies leave to file and denies applicant's motion for bond, I respectfully dissent.
Given the expedited nature of the proceedings requesting bond, it appears that the record before us may be incomplete or unclear with respect to certain events. For the purposes of this opinion that does not attempt to resolve the ultimate merits of the application, I have accepted the State's and applicant's representations about events that are otherwise not clear from the existing record.
See Tex. Gov't Code § 21.002(d).
In the July 11 video, applicant stated that "every person connected with this contempt case is just doing what they are told." Applicant pointed to a portrait of Judge Hohengarten while calling her "weak." In the August 9 video, applicant stated that the contempt court would be "the subject of our new focus on weakness." In that same video, applicant indicated that he had told his lawyer to "tell the Judge to 'eat a* * * *'." Applicant further stated, "There is no question this is stupid. This is just how stupid are they going to let me make them look before they agree that their position is WEAK...." Applicant also stated, "I'm going to show you the way it really goes in a town called F* * *around." The court commented that this last statement by applicant constituted a declaration of his intent to obstruct the legal process.
See Ex parte Eureste , 725 S.W.2d 214, 216 (Tex. Crim. App. 1986) ; Tex. Code Crim. Proc. art. 11.32.
See In re State ex rel. Escamilla, No. 03-17-00667-CV, 2017 WL 4583208 (Tex. App.-Oct. 12, 2017).
See Tex. Gov't Code § 21.002(d).
See Tex. Code Crim. Proc. art. 11.32.
See, e.g., Ex parte Mallory , No. WR-78,160-02, 2013 WL 1232949 (Tex. Crim. App. March 27, 2013) (releasing attorney who had been held in contempt on personal bond pending resolution of original habeas application); Ex parte Gibson , 811 S.W.2d 594, 594 (Tex. Crim. App. 1991) (granting relief from contempt order, and noting that attorney had been released by this Court during pendency of habeas proceeding).
See Tex. Code Crim. Proc. art. 44.04(b).
See Ex parte Reposa , No. AP-75,965, 2008 WL 2673715 (Tex. Crim. App. July 2, 2008).
See Ex parte Reposa , No. AP-75,965, 2009 WL 3478455 (Tex. Crim. App. Oct. 28, 2009).
Although I acknowledge that the instant case involves a contempt judgment stemming from proceedings in a county court at law as opposed to a district court, this Court has previously considered original writs challenging that type of contempt order, including in the prior contempt case involving applicant. See, e.g., Reposa , 2009 WL 3478455, at *1 ; Ex parte Krupps , 712 S.W.2d 144, 145 (Tex. Crim. App. 1986).
See Smith v. Gohmert , 962 S.W.2d 590, 593 (Tex. Crim. App. 1998) ("Like mandamus, '[h]abeas corpus is an extraordinary remedy; and, ordinarily, neither a trial court nor this Court, either in the exercise of our original or appellate jurisdiction, should entertain an application for writ of habeas corpus where there is an adequate remedy at law.' ") (quoting Ex parte Groves , 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) ).
Section 21.002(d) provides,
An officer of a court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence. The presiding judge of the administrative judicial region in which the alleged contempt occurred shall assign a judge who is subject to assignment by the presiding judge other than the judge of the offended court to determine the guilt or innocence of the officer of the court.